

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

## NUMBER 13-06-638-CV

ROBERT HOLEMAN TWIST,                                    Appellant,

**v.**

MC ALLEN NATIONAL BANK,                                   Appellee.

---

## NUMBER 13-07-105-CV

## IN RE: ROBERT HOLEMAN TWIST

---

On petition for writ of mandamus and on appeal from
the 92nd District Court of Hidalgo County, Texas.

---

# O P I N I O N

Before Justices Yañez, Garza, and Vela[1]
Opinion by Justice Yañez

---

[1]The Honorable Rose Vela concurs in the result only, without separate opinion.

Robert H. Twist filed an appeal[2] and a mandamus[3] proceeding arising from orders issued by the trial court in cause number C-3690-99-A.[4] We have consolidated the appeal and mandamus proceeding for purposes of briefing and oral argument. Appellees/Real Parties-in-Interest have moved to dismiss the appeal and the mandamus proceeding and are seeking sanctions as a result of both proceedings. As discussed below, we dismiss the appeal, deny the mandamus petition, and grant Real Parties' Motions for Sanctions under Texas Rule of Appellate Procedure 52.11.[5] No motion for rehearing in either the appeal or the mandamus proceeding will be entertained, nor will any further proceedings in this Court arising from trial court cause number C-3690-99-A.

## I. BACKGROUND

This case has a long and arduous history. We will begin with a history of the litigation and a discussion of the proceedings before this Court.

### A. Trial court cause no. C-3690-99-A's origin

In 1995, appellant/relator Robert H. Twist recovered a personal injury settlement for $175,000.00, which he deposited into an account at McAllen National

---

[2] *Twist v. McAllen Nat'l Bank, et al.,* appellate cause number 13-06-638-CV.

[3] *In re Twist,* appellate cause number 13-07-105-CV. Respondent is Hon. Ricardo Rodriguez, Jr., presiding judge of the 92nd District Court of Hidalgo County, Texas.

[4] Normally we need not reference the trial court's cause number in the body of an opinion. However, Robert H. Twist has filed numerous lawsuits and appellate proceedings arising out of the same set of facts. The multiplicity of Twist's actions remind this Court of the multi-headed monster from Greek mythology, the Lernaean hydra: cut off a head, and several heads grow back in its place. We wish to make absolutely clear which litigation we are addressing because we intend this opinion to completely dispose of the hydra and all its heads.

[5] TEX. R. APP. P. 52.11.

2

Bank (the "Bank"). At the time, Twist was married to Brenda Griggs, but he allegedly instructed the Bank not to distribute any funds from the account to her without his prior approval. Griggs transferred the money out of the account and then filed for divorce. Griggs later filed for Chapter 13 Bankruptcy on March 1, 1999, in the United States District Court for the Northern District of Texas, Dallas Division.

On July 12, 1999, after Griggs was already in bankruptcy, Twist brought suit against the Bank in Hidalgo County District Court, trial court cause number C-3690-99-A, seeking to recover the funds. The Bank filed a third-party action against Griggs seeking contribution and indemnity. Griggs filed an answer, but she did not notify the parties that she was under the protection of the automatic bankruptcy stay.

B. **Twist agrees to settle with the Bank, but later he purports to revoke his consent.**

On October 9, 2000, Twist and the Bank agreed to settle the case for $75,000.00. Twist and the Bank appeared before the trial court and dictated their settlement agreement into the record.[6] Twist consented to the settlement under oath on the record. However, the trial court did not enter a judgment at that time.

On November 21, 2000, the parties appeared again before the trial court. Twist was sworn and stated under oath that he was revoking his consent to the settlement. Twist stated that he objected to the settlement because the Bank's proposed settlement agreement did not admit liability and contained indemnity language. The Bank stated that it intended to seek enforcement of the settlement agreement. However, no judgment was entered at that time.

---

[6] See TEX. R. CIV. P. 11.

**C.  The Bank orally moves to enforce the settlement agreement, and the trial court dismisses Twist's claims with prejudice.**

On January 19, 2001, the parties again came before the trial court for a status conference.  At the hearing, the Bank made an oral motion to enforce the settlement agreement.  Twist's attorney did not object to the Bank's use of an oral motion to enforce the settlement agreement, nor did he object to lack of notice that the court would hear such a motion.  The Bank's attorney represented that the Bank had tendered the money to Twist.  Nevertheless, Twist again stated that he was revoking his consent to the settlement agreement.  The court asked the parties to submit proposed orders.

That same day, the court issued an "Order Enforcing Settlement Agreement," dismissing Twist's claims with prejudice.  It stated that the Bank had moved to enforce the settlement agreement, that the court considered the transcript of the Rule 11 agreement, and that Twist had untimely revoked his consent to the agreement by revoking it after the court had already approved the settlement.

Twist sought reconsideration of the January 19, 2001 order dismissing his claims with prejudice, but the trial court denied the motion.  According to the docket sheet, there were some motions filed seeking distribution of the settlement funds, although these motions are not contained in the mandamus record, and it is not clear what relief was sought or why.  The trial court held a hearing on October 11, 2001.  At that hearing, Twist admitted to the court that he had received the settlement check and had cashed it.  The trial court orally stated that the case would be dismissed, even though the court had already dismissed all of Twist's claims with

4

prejudice. On April 29, 2002, the trial court issued a second order dismissing Twist's claims with prejudice. Twist did not immediately appeal either of the orders dismissing his claims with prejudice.

## D. Griggs is discharged from bankruptcy, and Twist seeks appellate review (the *"Twist I appeal"*).

Almost two years later, on April 6, 2004, Griggs was discharged from bankruptcy. Shortly thereafter, on May 3, 2004, Twist filed an appeal from the April 29, 2002 order (the *"Twist I appeal"*).[7] This Court held that Twist's notice of appeal had been due on May 29, 2002 (thirty days from the April 29, 2002 order) but was not filed until May 3, 2004.[8] Thus, the appeal was untimely.[9] Twist also failed to pay the filing fee.[10] We notified Twist of these defects, which he failed or was unable to cure.[11]

This Court dismissed the appeal because of Twist's failure to comply with the appellate rules.[12] We noted that Twist had sent a letter stating his opinion that the April 29, 2002 order was interlocutory, but we did not express any opinion on that issue.[13]

---

[7] *Twist v. McAllen Nat'l Bank,* No. 13-04-613-CV, 2005 Tex. App. LEXIS 5226, at *1 (Tex. App.–Corpus Christi July 7, 2005, no pet.) (per curiam).

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at *1-2.

[12] *Id.* at *2.

[13] *Id.* at *1-2.

**E.    Twist attempts to resurrect his claims in the trial court.**

On the same day that Twist filed his appeal with this Court, he filed an "amended" petition in the trial court.  He attempted to add the Bank's lawyers as defendants: the firm of Kittleman, Thomas, & Gonzales, L.L.P., and its named partners, Ray Thomas and Veronica Gonzales ("Kittleman").  Twist alleged against the Bank and these additional defendants the same claims that were previously dismissed with prejudice.

Twist argued that the trial court still had jurisdiction over the case because the orders dismissing his claims against the Bank with prejudice were not final orders.  Specifically, Twist argued that because any claims against Griggs were subject to the bankruptcy stay, the trial court's orders dismissing his claims had no effect on the Bank's third-party claim against Griggs.  He reasoned that because the Bank's claim against Griggs remained pending, the trial court retained jurisdiction over the case.

**F.    The defendants file pleas to the jurisdiction, which the trial court grants, and Twist seeks mandamus relief ("*Twist I mandamus*").**

The Bank and Kittleman filed pleas to the jurisdiction, asserting that the trial court's plenary power had long since expired.  They argued that Griggs was never a party to the lawsuit because any filing against her during the pendency of the bankruptcy stay was merely a void act.  Thus, the orders dismissing Twist's claims were final orders, and the trial court's plenary power had expired.  Alternatively, the Bank and Kittleman argued that the trial court's order disposing of Twist's claims also disposed of their third-party claim by implication.

6

The trial court granted the Bank and Kittleman's pleas to the jurisdiction and struck Twist's "pleadings" on October 4, 2004. On December 14, 2004, Twist sought a writ of mandamus (the "*Twist I mandamus*"), seeking to compel the trial court to vacate its order granting the pleas to the jurisdiction. He asserted that there was not a final order because Griggs was never nonsuited or severed from the case, and the orders enforcing the settlement agreement did not dispose of that claim during the pendency of the bankruptcy stay. We denied mandamus relief on December 21, 2004, without an opinion on the merits.[14]

## G.  Twist persists in the trial court despite giving up his appeal and losing in the mandamus proceeding.

Notwithstanding this Court's denial of mandamus relief and the untimely attempt to appeal, Twist refused to give up. Twist filed motions on September 19, 2006 and October 12, 2006, asking the trial court to declare its previous orders void. He argued that the orders enforcing the settlement agreement were void because (1) he did not consent to the settlement, (2) the Bank did not file any pleading to support an action to enforce the settlement, and (3) he did not have any notice of the Bank's intent to enforce the settlement agreement. Alternatively, he argued that the orders were interlocutory because they did not dispose of the Bank's claims against Griggs (the same arguments rejected by the trial court and this Court). The trial court denied these motions on November 8, 2006.

## H.  Twist again seeks relief from this Court in the current proceedings ("*Twist II appeal*" and *"Twist II mandamus"*).

---

[14] *In re Twist*, No. 13-04-0660-CV, 2004 Tex. App. LEXIS 11546, at *1 (Tex. App.–Corpus Christi, Dec. 21, 2004, orig. proceeding) (mem. op.).

7

Still undeterred, Twist filed a second round of proceedings with this Court seeking review. First, he filed a notice of appeal on November 14, 2006, seeking review of the trial court's November 8, 2006 order; the appeal was docketed as appellate cause number 13-06-00638 (the "*Twist II appeal*"). The clerk of this Court sent Twist a letter, stating that there appeared to be no final order that would confer jurisdiction on the Court. Twist responded that he agreed and would be filing a writ of mandamus. Twist never filed a brief in the appeal.

Second, Twist filed a mandamus petition, docketed as appellate cause number 13-07-0105-CV (the "*Twist II mandamus*"). This petition is almost identical to the *Twist I mandamus* petition. First, Twist argues that the January 19, 2001 and April 29, 2002 orders enforcing the settlement agreement are void because the Bank did not file a pleading with the trial court asserting a claim for breach of contract. Second, he argues that the January 19, 2001 and April 29, 2002 orders are void because they impliedly disposed of the Bank's claim against Griggs while Griggs was in bankruptcy. Third, he argues that these orders were interlocutory because they did not dispose of the third-party action against Griggs. Therefore, he claims that the trial court's plenary power did not expire and that the trial court had jurisdiction over his amended petition.

I. **The Bank and Kittleman file motions to dismiss and for sanctions in the appellate proceedings, and this Court orders Twist to show cause.**

The Bank filed a motion to dismiss and for sanctions in the *Twist II appeal*, asserting that the appeal is frivolous and filed solely for the purpose of delay and harassment. The Bank seeks $78,659.50 in attorney's fees, and the motion is

8

supported by an affidavit stating that this is the amount of reasonable and necessary attorney's fees that it has incurred since 2004.

On March 14, 2007, this Court issued an order requiring Twist and his counsel, Mr. Stephen T. Leas, to show cause why they should not be sanctioned. In that order, we consolidated the appeal and the mandamus for purposes of briefing and oral argument and set the matter for hearing on April 4, 2007. Twist filed a response to the Bank's motion for sanctions. The Bank then filed a reply in both the appeal and the mandamus proceeding, reasserting its arguments in favor of sanctions.

Kittleman moved for sanctions on April 3, 2007. This motion was filed *after* this Court issued its show cause order and set a hearing on the Bank's motion for sanctions and to dismiss the appeal.[15] The Kittleman motion adopts the Bank's motion for sanctions and reply brief by reference. In addition, Kittleman asks that this Court construe the Bank's motion for sanctions as one under both Texas Rule of Appellate Procedure 45 (applicable to frivolous appeals) and under Texas Rule of Appellate Procedure 52.11 (sanctions in original proceedings). Kittleman asks for reasonable and necessary attorney's fees in the amount of $15,000.00 incurred since May 2004, which were supported by an affidavit by Raymond Cowley.

The parties appeared before this Court and presented arguments on the sanctions motions on April 4, 2007.

## II. TWIST II MANDAMUS

---

[15] At the hearing on the order to show cause, Twist's counsel waived any further notice or right to have a separate hearing to show cause.

We will address the merits of the mandamus petition first because it is fully briefed. To obtain mandamus relief, the relator must demonstrate that the trial court clearly abused its discretion and that the relator has an inadequate remedy by appeal.[16]

A trial court abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law."[17] With respect to matters committed to the trial court's discretion, the relator must demonstrate that the trial court could have only reached one conclusion.[18] The reviewing court cannot disturb the trial court's ruling unless it is shown to be arbitrary and unreasonable.[19] "On the other hand, review of a trial court's determination of the legal principles controlling its ruling is much less deferential. A trial court has no 'discretion' in determining what the law is or applying the law to the facts."[20] If the trial court clearly fails to analyze or apply the law correctly, such failure will constitute an abuse of discretion.[21]

The relator must also show that his or her appellate remedy is inadequate.[22] The Texas Supreme Court has explained that this element requires a practical and

---

[16] *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004).

[17] *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1990) (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)).

[18] *Id.* at 840.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *In re Prudential*, 148 S.W.3d at 136.

prudential analysis, requiring consideration of both public and private interests.[23] "An appellate remedy is 'adequate' when any benefits to mandamus review are outweighed by the detriments. When the benefits outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate."[24] However, the Supreme Court has also held that where the trial court issues a void order, the relator need not show that an appellate remedy is inadequate to obtain mandamus relief.[25]

Twist raises several arguments that he contends result in a live proceeding currently before the trial court, over which the trial court refused to recognize jurisdiction. First, he argues that the trial court's judgments enforcing the settlement agreement are void; thus, the trial court never disposed of his claims. Second, he argues that, if the order enforcing the settlement agreement is not void, it is nevertheless an interlocutory order because the Bank's third-party action against Griggs was never finally determined. Thus, the trial court erroneously denied that it had jurisdiction over his claims.

## A.    Trial court's jurisdiction to enforce the settlement

Although it is now 2007, Twist still complains of the trial court's orders from 2001 and 2002 enforcing his settlement with the Bank. He argues that because he revoked his consent before judgment was rendered, the trial court lacked jurisdiction to enter an agreed judgment on the settlement agreement. He also argues that the

---

[23] *Id.*

[24] *Id.*

[25] *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000).

11

trial court could not enforce the settlement as a contract because the Bank never filed a motion to enforce the settlement. He concludes that the trial court's orders enforcing the settlement agreement are void; therefore, he is entitled to mandamus relief to force the trial court to acknowledge jurisdiction over his amended pleading filed on May 3, 2004.

Twist revoked his consent before judgment was entered. Therefore, Twist is correct that the trial court did not have authority to enter an agreed judgment.[26] If a court purports to render an agreed judgment after consent has been withdrawn, the judgment is void.[27]

However, an agreed judgment is different than a judgment enforcing a settlement agreement.[28] The Texas Supreme Court has held that, although a trial court has no authority to enter an agreed judgment, it can certainly enforce a settlement agreement even if one party has revoked consent, if there are proper pleadings and proof to support enforcement.[29] The question becomes, then, what pleadings and proof are sufficient?

Twist argues that a judgment enforcing a settlement agreement is *void* if there are no pleadings asserting a cause of action to enforce the agreement. He apparently asserts that the Bank was required to file a counter-claim alleging breach

---

[26] *See Padilla v. La France*, 907 S.W.2d 454, 461-62 (Tex. 1995); *Ford Motor Co. v. Castillo*, 200 S.W.3d 217, 223 (Tex. App.–Corpus Christi 2006, pet. filed); *Neasbitt v. Warren*, 105 S.W.3d 113, 117 (Tex. App.–Fort Worth 2003, no pet.).

[27] *Woods v. Woods*, 167 S.W.3d 932, 933 & n.2 (Tex. App.–Amarillo 2005, no pet.).

[28] *Neasbitt*, 105 S.W.3d at 117.

[29] *Padilla*, 907 S.W.2d at 461-62.

of contract. He asserts that a judgment enforcing a settlement can only be rendered after a trial on the merits, whether by summary judgment, bench trial, or jury trial. Because the Bank made an oral motion to enforce the settlement agreement, but never filed a pleading to support such a cause of action, he reasons that the judgment enforcing the settlement agreement is void.

For support, in his original petition for writ of mandamus, he quotes alleged language from the Texas Supreme Court's decision in *Padilla*, asserting that the supreme court held that "if a party seeks to enforce a settlement agreement, it must invoke the Court's jurisdiction over the subject matter by filing the proper pleadings, as in any suit based in contract, and any order entered without proper pleadings is void."[30] This Court has reviewed the *Padilla* case numerous times, and this language does not appear in the *Padilla* opinion.[31] Moreover, this Court has not located a single case holding that a judgment enforcing a settlement agreement rendered without supporting pleadings is *void*, as opposed to voidable.[32]

Twist's argument is contrary to the relevant case law and the rules of procedure relating to motions, waiver of pleading defects, and trial by consent. This Court has held that a party seeking enforcement of a settlement agreement when

---

[30] In his amended petition for writ of mandamus in the *Twist II mandamus*, Twist deleted this citation and quote.

[31] *See generally Padilla*, 907 S.W.2d 454.

[32] *Cf. Hermida v. Hermida*, No. 04-96-00869-CV, 1998 Tex. App. LEXIS 532, at *8-9 (Tex. App.–San Antonio 1998, no pet.) (not designated for publication) (unlike an agreed judgment rendered without consent, a judgment enforcing a settlement agreement is not void and subject to collateral attack).

consent is revoked must enforce it as a written contract.[33] We have stated that this separate breach of contract claim is subject to the "normal rules of pleading and proof."[34] We have advised that parties seeking enforcement should assert their breach of settlement agreement claims in the underlying action while the trial court still has jurisdiction.[35] We have further stated that the claim should be asserted through an amended pleading or counter-claim.[36]

Although an amended pleading is the preferred method of raising such a claim, this Court has also held that a motion to enforce settlement is a sufficient pleading to allow a trial court to render judgment enforcing the settlement.[37] As long as the motion recites the terms of the agreement, states that the other party has revoked its previously stated consent to the agreement, and requests the trial court to grant relief, the motion is sufficient.[38] In other words, if the motion satisfies the general purpose of pleadings, which is to give the other party notice of the claim and the relief sought, it is sufficient to allow the trial court to render judgment enforcing the settlement.[39]

The "normal rules of pleading" include rule 21, which allows oral motions to

---

[33] *Citgo Ref. & Mktg., Inc. v. Garza*, 94 S.W.3d 322, 330 (Tex. App.–Corpus Christi 2002, no pet.).

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Castillo*, 200 S.W.3d at 224; *Neasbitt*, 105 S.W.3d at 118.

[38] *Neasbitt*, 105 S.W.3d at 118.

[39] *Castillo*, 200 S.W.3d at 224.

14

be made at a hearing.  Rule 21 provides:

> Every pleading, plea, motion or application to the court for an order, whether in the form of a motion, plea or other form of request, *unless presented during a hearing or trial,* shall be filed with the clerk of the court in writing, shall state the grounds therefor, shall set forth the relief or order sought, and at the same time a true copy shall be served on all other parties, and shall be noted on the docket.[40]

Numerous cases have approved the use of oral motions presented at a hearing or at trial.[41]  The oral motion to enforce the settlement was effective to invoke the court's power to enforce the agreement provided that the oral motion contained enough information to allow Twist to meaningfully respond.[42]

The Bank made an oral motion to enforce the agreement, and the Bank provided the trial court with the settlement agreement which was dictated into the

---

[40] TEX R. CIV. P. 21 (emphasis added).

[41] *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 91 (Tex. 1996) (enforcing Rule 11 agreement regarding consideration of plaintiff's evidence based on oral request for enforcement made at a hearing).  The Texas Supreme Court has held that "[a] trial court may entertain a number of oral motions in the course of a trial, but one which disposes of parties to an action, should indeed be in writing and with notice to the parties." *City of Houston v. Sam P. Wallace & Co.*, 585 S.W.2d 669, 673 (Tex. 1979).  However, in that case, the City of Houston's co-plaintiff, Little, settled with the defendant without telling the court or the City.  *Id.*  The charge was submitted to the jury, and without notice to the City, Little shifted his arguments to assert that the City should not recover against the defendant. *Id.*  While the jury was deliberating, and the City's counsel was out of the courtroom, Little moved to nonsuit its claims against the City. *Id.*  The City did not learn about the nonsuit until a week later. *Id.* On appeal, the supreme court held that motions disposing of parties to a case should be in writing so that all parties have notice. *Id.*  However, that is not the case here.  As discussed below, we have no trouble concluding that Twist had notice that the Bank was seeking to enforce the settlement; Twist and his counsel were present when the motion was made, and Twist's counsel did not object to any lack of notice.

[42] *See Palo Pinto County v. Lee,* 988 S.W.2d 739, 739-40 (Tex. 1998) (per curiam) (denying petition for review but disapproving of language that oral motion to strike was not properly presented during a hearing); *see also In re N.S.*, No. 10-01-319-CV, 2004 Tex. App. LEXIS 1449, at *22 & n.5 (Tex. App.–Waco Feb. 11, 2004, pet. denied) (mem. op.) (holding Rule 21 permits oral motions if presented during a hearing); *Miller v. Miller*, No. 05-02-01903-CV, 2003 Tex. App. LEXIS 8800 (Tex. App.–Dallas Oct. 15, 2003, no pet.) (mem. op.) ("[M]otions are neither required to be preceded by three days' notice nor are they required to be in writing when they are presented during a hearing or trial.").

record.  The Bank argued that Twist revoked his previously expressed consent to the agreement.  The Bank requested relief.  Thus, the oral motion had all the necessary elements.[43]

Even if the oral motion was insufficient, the trial court's order enforcing the settlement would not be *void.*  The lack of a pleading or sufficient notice of a hearing does not make the judgment *void.*  In general, the failure to point out a defect or omission in pleadings results in a waiver of the objection.[44]  Additionally, the failure to object to insufficient notice of a hearing waives the issue.[45]  Certainly if the issue can be waived, the judgment cannot be void.

Twist appeared at the status hearing.  He did not object to the oral motion, to the lack of a written pleading, or to the lack of sufficient notice that the court was considering the Bank's motion to enforce the agreement.  In fact, instead of objecting, Twist argued his defense to enforcement of the agreement.[46]  Twist's

---

[43] *Neasbitt,* 105 S.W.3d at 118.  Moreover, we have no problem concluding that Twist had actual notice that the Bank was seeking to enforce the settlement. *See Castillo,* 200 S.W.3d at 224-25 (holding that trial court's enforcement of settlement agreement was proper where plaintiffs filed a motion to enforce, and Ford clearly had actual notice that the plaintiffs were seeking to enforce the settlement).  On November 21, 2000, the parties appeared before the trial court.  Twist was sworn in and stated under oath that he was revoking his consent to the settlement.  The Bank stated at that time that it intended to seek enforcement of the settlement agreement.  Thus, Twist was on notice at least as early as November 21, 2000 that the Bank was seeking to enforce the settlement agreement. On January 19, 2001, the parties again came before the trial court for a status conference.  At the hearing, the Bank made an oral motion to enforce the settlement agreement.  Twist's attorney did not object to the Bank's use of an oral motion to enforce the settlement agreement, nor did Twist object to lack of notice that the court would hear such a motion.

[44] TEX. R. CIV. P. 90.

[45] *Walker v. Gonzales County Sherriff's Dep't,* 35 S.W.3d 157, 160 (Tex. App.–Corpus Christi 2000, pet. denied).

[46] TEX. R. CIV. P. 67 (trial by consent occurs when issues not raised by the pleadings are tried without objection).

16

complaints about the procedures followed were waived.

For the foregoing reasons, we hold that the trial court had subject-matter jurisdiction to render judgment enforcing the settlement agreement; its order was not void. For the reasons discussed in the following sections, even if we agreed that the trial court erred in enforcing the settlement agreement, Twist's complaints are two years too late.

## B.  Finality of the order enforcing the settlement

Twist next argues that, if the order enforcing the settlement was not void, it was nevertheless not a final order disposing of all the parties and claims. Twist argues the court's January 19, 2001 and April 29, 2002 orders enforcing the settlement agreement were interlocutory because they could not and did not dispose of the Bank's third-party action against Griggs while Griggs was in bankruptcy.

We agree that a court cannot render a judgment against a debtor in bankruptcy while a stay is in place. Judgments, including orders dismissing a debtor from the suit, are void if rendered against a debtor under the protection of a bankruptcy stay.[47] Moreover, a judgment against a debtor's co-defendants is not a final, appealable judgment unless the debtor is severed from the action because the judgment does not dispose of all the parties.[48] However, Twist's mandamus record demonstrates that his original petition and the Bank's third-party action were filed *after* Griggs was already under the protection of the bankruptcy court. This changes

---

[47] *Sanchez v. The Honorable Darrell Hester,* 911 S.W.2d 173, 176 (Tex. App.–Corpus Christi 1995, orig. proceeding).

[48] *Id.* at 177; *Hood v. Amarillo Nat'l Bank*, 815 S.W.2d 545, 547 (Tex. 1991).

17

things significantly.

The bankruptcy stay protects debtors from the *commencement or continuation* of an action against them.[49] This Court has expressly held that a suit filed against a debtor already under the protection of a bankruptcy stay is a nullity[50] —the trial court does not acquire jurisdiction over an action *commenced* during the automatic stay.[51] Therefore, the Bank's third-party action against Griggs while she was in bankruptcy had no legal effect, and Griggs never became a party to the action in the trial court.[52] The trial court's order enforcing the settlement dismissing Twist's claims against the Bank, whether one considers the final order to be the January 19, 2001 or the April 29, 2002 order, was not a void order. Rather, it was a final order that disposed of all parties and claims.[53]

## C.     Twist's pleadings and the trial court's rulings subsequent to the orders enforcing the settlement

Because the trial court's orders enforcing the settlement were not void and constituted a final judgment disposing of all parties and claims, we next determine

---

[49] 11 U.S.C. § 362(a)(1); *Hood*, 815 S.W.2d at 547.

[50] Despite the fact that the Bank raised this exact argument in its plea to the jurisdiction after Twist tried to resurrect his claims in 2004, Twist does not mention this argument at all in his mandamus petition, nor does he try to distinguish this Court's decision in *Padrino.*

[51] *Padrino Mar. v. Rizo*, 130 S.W.3d 243, 247 (Tex. App.–Corpus Christi 2004, no pet.) (suit filed during stay is "a void action"); *see also Lovall v. Chao*, No. 01-02-01019-CV, 2005 Tex. App. LEXIS 415, at *7 (Tex. App.–Houston [14th Dist.] Jan. 20, 2005, no pet.) (mem. op.); *In re De la Garza*, 159 S.W.3d 119, 121 (Tex. App.–Corpus Christi 2004, orig. proceeding) (refusing to resurrect void judgment issued during bankruptcy proceedings after bankruptcy proceeding was dismissed); *Graham v. Pazos de la Torre*, 821 S.W.2d 162, 164 (Tex. App.–Corpus Christi 1991, writ denied).

[52] *See Padrino*, 130 S.W.3d at 247.

[53] The Bank and Kittleman argue alternatively that the trial court's orders enforcing the settlement agreement also disposed of the action against Griggs. Because the trial court never acquired jurisdiction over Griggs, we need not discuss these arguments. TEX. R. APP. P. 47.1.

what effect Twist's subsequent filings had on the proceedings below. Giving Twist the benefit of the doubt, and assuming that the April 29, 2002 order enforcing the settlement was the final order in the case, the trial court's plenary power expired, at the latest, on May 29, 2002.[54]

Absent any post-judgment motions, Twist's notice of appeal was due on May 29, 2002.[55] Twist, however, did not appeal the April 29, 2002 order until May 3, 2004. For this reason, this Court rejected Twist's first appeal as untimely.[56] Twist sought to amend his pleadings to resurrect his claims and add new defendants on May 3, 2004, more than two years after the final judgment in the case. Because the trial court's jurisdiction had expired, Twist's amended petition and all of Twist's later filings in the trial court were a nullity.[57]

We recognize that the Bank and Kittleman were put in the untenable position of choosing to ignore Twist's filings after the trial court's plenary power expired or respond to his improper "pleadings." In this case, however, the Bank and Kittleman's responsive filings were unnecessary, as were the trial court's rulings on

---

[54] TEX. R. CIV. P. 329b(f); *In re Lynd Co.*, 195 S.W.3d 682, 685 (Tex. 2006) (holding that absent an extension of post-judgment deadlines under rule 306a, the trial court's plenary power expires thirty days after the judgment is signed).

[55] TEX. R. APP. P. 26.1.

[56] *Twist,* 2005 Tex. App. LEXIS 5226, at *1.

[57] *See In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998) (orig. proceeding); *see also Chemject Int'l, Inc. v. Sw. Bell Tel. Co.*, No. 13-06-032-CV and 13-04-567-CV, 2007 Tex. App. LEXIS 586, at *11 (Tex. App.–Corpus Christi Jan. 25, 2007, pet. denied) (mem. op.).

19

Twist's subsequent filings, because the trial court's plenary power had expired.[58]

Accordingly, we deny Twist's petition for writ of mandamus in cause number 13-07-00105-CV.

**D.     Sanctions for conduct in the *Twist II mandamus* proceeding under Texas Rule of Appellate Procedure 52.11**

The Bank and Kittleman have moved for sanctions in cause number 13-07-0105-CV, alleging that the mandamus petition was groundless and filed in bad faith.[59]   We issued an order directing Twist to show cause why he should not be sanctioned.  Recognizing that we must "exercise the discretion afforded us by Rule 52.11 with caution and only after careful deliberation,"[60] we find that sanctions are appropriate for the following reasons.

Texas Rule of Appellate Procedure 52.11 prohibits attorneys from filing petitions for writ of mandamus in "bad faith:"

> On motion of any party or on its own initiative, the court may—after notice and a reasonable opportunity to respond—impose just sanctions on a party or attorney who is not acting in good faith as indicated by any of the following:
>
> (a)     filing a petition that is clearly groundless;
>
> (b)     bringing the petition solely for delay of an underlying proceeding;
>
> (c)     grossly misstating or omitting an obviously important and material fact

---

[58] *See State ex rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex. 1985) (per curiam) ("Judicial action taken after a cause has expired is a nullity."); *In re E.B.Y.*, No. 13-07-772-CV, 2007 Tex. App. LEXIS 5352, at *4 (Tex. App.–Corpus Christi July 5, 2007, no pet.) (mem. op); *Chemject Int'l, Inc.*, 2007 Tex. App. LEXIS 586, at *11.

[59] *See* TEX. R. APP. P. 52.11.

[60] *See In re Lerma*, 144 S.W.3d 21, 26 (Tex. App.–El Paso 2004, orig. proceeding).

in the petition or response; or

(d)     filing an appendix or record that is clearly misleading because of the omission of obviously important and material evidence or documents.[61]

Texas Disciplinary Rule of Professional Conduct 3.03(a)(1) states that a lawyer "shall not knowingly . . . make a false statement of material fact or law to a tribunal."[62]   Subsection (a)(4) of that rule provides:   "A lawyer shall not knowingly . . . fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."[63]  The comments expand on the prohibitions:

> Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal.  A lawyer is not required to make a disinterested exposition of the law, but should recognize the existence of pertinent legal authorities.  Furthermore, as stated in paragraph (a)(4), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction which has not been disclosed by the opposing party.  The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.[64]

Additionally, we find guidance in the Texas Lawyer's Creed and the Standards for Appellate Conduct promulgated by the Texas Supreme Court.  The Texas Lawyer's Creed provides "a clear directive about how lawyers are to conduct

---

[61] TEX. R. APP. P. 52.11.

[62] Tex. Disciplinary R. of Prof'l Conduct 3.03(a)(1), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R. art. X., § 9).

[63] *Id.* 3.03(a)(4).

[64] *Id.* cmt. 3.

themselves in respect to the legal system, the courts, clients and other lawyers."[65]

The Creed states, "I am passionately proud of my profession. Therefore, 'My word is my bond.'"[66] Additionally, the Standards for Appellate Conduct provide:

> As professionals and advocates, counsel assist the Court in the administration of justice at the appellate level. Through briefs and oral submissions, counsel provide a fair and accurate understanding of the facts and law applicable to their case. . . . 3. Counsel should not misrepresent, mischaracterize, misquote, or miscite the factual record or legal authorities.[67]

In *In re Colonial Pipeline Co.*, this Court ordered the relators to show cause why they should not be sanctioned for failing to disclose controlling case authority and failing to distinguish it from the case at issue.[68] We held that "such failure to disclose pertinent adverse authority might well be a failure of Relators to deal in good faith with this Court and a breach of professional ethics," and we held that such failure would likely be sanctionable under Texas Rule of Appellate Procedure 52.11(a).[69] At the show cause hearing in the case, however, relators satisfactorily explained that the case law at issue was not controlling and had not been discussed for that reason.[70] Other courts, however, have sanctioned a relator's counsel for

---

[65] *In re Hasbro, Inc.*, 97 S.W.3d 894, 897 n.2 (Tex. App.–Dallas 2003, orig. proceeding).

[66] *See* Texas Lawyer's Creed, *available at* http://www.txethics.org/reference_creed.asp (last visited Oct. 8, 2007).

[67] Texas Supreme Court, Standards for Appellate Conduct, *available at* http://www.supreme.courts.state.tx.us/rules/conduct.asp; *see also In re Hasbro, Inc.*, 97 S.W.3d at 897 n.2.

[68] 960 S.W.2d 272, 273-74 (Tex. App.–Corpus Christi 1997, orig. proceeding).

[69] *Id.*

[70] *See In re Colonial Pipeline Co.*, No. 13-97-808-CV, 1998 Tex. App. LEXIS 393 (Tex. App.–Corpus Christi Jan. 22, 1998, orig. proceeding).

grossly misstating the law and the facts of cited case precedent, finding that petitions based on such statements are groundless and brought in bad faith.[71]

As noted above, Twist's mandamus petition quotes language from the Texas Supreme Court's opinion in *Padilla v. La France*.[72] His petition states the following, verbatim:

> In *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995), the Supreme Court held that "if a party seeks to enforce a settlement agreement, it must invoke the Court's jurisdiction over the subject matter by filing the proper pleadings, as in any suit based in contract, and any order entered without proper pleadings is void."

We have reviewed that case, and no such statement appears in the opinion.

At the hearing to show cause, in response to the Court's questions about the Bank's oral motion to enforce the settlement agreement, Twist's attorney represented the supreme court's holding in *Padilla* by initially repeating the position espoused in his petition: "You have to file a written motion to enforce a settlement agreement. It has to be a written motion. That's what *Padilla* says." With respect to his failure to accurately quote *Padilla*, Twist's attorney argued that the quotations around the cited language from the *Padilla* opinion were a "typographical error." He stated, "It's not a quote, but that's what the court held in essence, was that without a written motion, without following a normal suit to enforce the contract the way you're supposed to do it in writing, with notice, it's void, period."

Justice Benavides then stated that the Court had read *Padilla* and was

---

[71] *See, e.g., In re Guevara*, 41 S.W.3d 169, 171-74 (Tex. App.–San Antonio 2001, orig proceeding) (per curiam) (sanctioning relator's counsel for misrepresenting the holdings of the San Antonio Court of Appeals and the Texas Supreme Court).

[72] *Padilla*, 907 S.W.2d at 461-62.

23

concerned that *Padilla* had been misrepresented to the Court:

> So are you telling this Court that *Padilla* says that you need to have a written motion in order to have subject matter jurisdiction? Because this Court looked at *Padilla* and it does not state what you said in your brief. And one of the reasons that the Court can sanction you under the appellate procedure Rule 52.11 is that if you are misstating or omitting an obviously important and material fact in the petition or the response. So if you're misquoting *Padilla* and that is the basis of your allegations to this Court of why this Court wants jurisdiction, then we have some problems[,] Mr. Leas.

Confronted with the Court's awareness of *Padilla*'s holding, Twist's counsel backtracked: "*Padilla* said that you have to have, you have to follow as any suit in contract. And there's a string of cases that say that." After the hearing, Twist amended his petition to delete the references to the quoted language from *Padilla.*

Twist's arguments regarding the January 19, 2001 and April 19, 2002 orders focus solely on whether those orders are "void." Even if the quotations were accidentally placed in the text, *Padilla* does not state, explicitly or otherwise, that orders enforcing a settlement agreement rendered without supporting pleadings are "void," nor does the opinion suggest such a rule.[73] *Padilla* discusses the requirements for enforcing a settlement agreement in a few broadly worded sentences: "An action to enforce a settlement agreement, where consent is withdrawn, must be based on proper pleading and proof. In this case, for example, Padilla filed a counterclaim seeking enforcement of the parties' agreement, and both sides moved for summary judgment on that claim."[74] Nowhere does the *Padilla*

---

[73] *Id.* at 461.

[74] *Id.*

24

opinion state that the failure to properly plead and prove a breach of a settlement agreement renders any judgment enforcing the agreement *void*, nor does the opinion state that an oral motion to enforce a settlement agreement is insufficient. Moreover, this Court has not located *any* authority to support Twist's position that the orders enforcing the settlement are "void."

More troubling, however, is Twist's argument that the trial court's orders enforcing the settlement agreement did not dispose of the entire case. In their pleas to the jurisdiction, the Bank and Kittleman argued that the Bank's third-party claim against Griggs was a void action because it was taken, unwittingly, in violation of the automatic stay in bankruptcy. Twist's mandamus petition does not address, or even acknowledge, this argument, nor does it discuss controlling authority on this point that is directly contrary to Twist's argument. Specifically, Twist does not attempt to distinguish our decision in *Padrino Maritime v. Rizo*, where we expressly held that a suit filed during an automatic stay in bankruptcy is a void act that does not invoke the trial court's jurisdiction over the party in bankrutpcy.[75]

Finally, the allegations in the *Twist II mandamus* are identical to those argued in the *Twist I mandamus*, which we denied. When confronted with this assertion at the show cause hearing, Mr. Leas stated:

> The mandamus action in 2004 was a different action. It had different points in it. The mandamus action in 2004 was based on, number one, abuse of discretion, dismissed case for want of jurisdiction because of loss of plenary power because there was no final judgment in the case. . . . And the other was abuse of discretion because third-party defendant breaches of bankruptcy and there was

---

[75] 130 S.W.3d at 247.

25

no dismissal or severance of third-party claim.

As can be gleaned from our discussion of the arguments above, these are the identical issues raised in the current mandamus proceeding, the *Twist II mandamus.*

Although we might have overlooked the misquotation and mischaracterization of *Padilla* as negligent error,[76] given the additional complete failure to cite and analyze the law governing critical points in Twist's argument and the refusal to accept this Court's disposition of arguments previously presented to this Court, we can only conclude that Twist's counsel knowingly and in bad faith brought this petition for writ of mandamus, which we find to be groundless.[77]

We are, however, mindful that any sanctions must "bear a direct relationship to the offensive conduct."[78] Groundless litigation "unduly burdens the other parties involved and the judicial system itself."[79] Accordingly, we grant the Bank's and Kittleman's motion for sanctions as to Twist's counsel, Stephen Leas. Mr. Leas is ordered to pay attorney's fees to the Bank in the amount of $2,500.00 and to Kittleman in the amount of $2,500.00. Such fees are to be paid within 30 days of the date of this opinion and are to be applied to real parties' attorney's fees

---

[76] *See In re Lerma*, 144 S.W.3d at 29 (refusing to exercise discretion to impose sanction for carelessness).

[77] TEX. R. APP. P. 52.11; *see In re Lincoln*, 114 S.W.3d 724, 728 (Tex. App.–Austin 2003, orig. proceeding) (awarding sanctions after finding a "pattern of filing baseless motions and petitions"); *In re Guevara*, 41 S.W.3d at 173 ("An attorney does not act in good faith when he presents false statements to the court.").

[78] *In re Hasbro, Inc.*, 97 S.W.3d at 898; *see also In re Lincoln*, 114 S.W.3d at 728.

[79] *In re Lincoln*, 114 S.W.3d at 728.

expended in responding to the *Twist II mandamus*.[80]  This Court has also incurred expenses in the form of court-reporting fees for the show cause hearing.  Mr. Leas is ordered to pay $365.15 to the Clerk of this Court as reimbursement for those expenses, within 30 days of the date of this opinion.

Additionally, we order Mr. Leas to attend a continuing legal education course in advanced civil procedure, to be completed within 180 days of the date of this opinion.  Mr. Leas shall submit written proof of his completion of the required course upon completion, provided, however, that such proof must be submitted no later than 200 days from the date of this opinion.[81]  Finally, we order Mr. Leas to cease and desist from filing frivolous motions and pleadings in this Court and the trial court.[82]  *Ya Basta!*[83]  Failure to comply with this Court's opinion may be punishable by contempt.  No motion for rehearing will be entertained in this matter.

### III. *TWIST II APPEAL*

Twist never filed an appellate brief in the *Twist II appeal* and has not moved to dismiss that appeal.  The Bank has moved to dismiss the appeal as untimely and for sanctions.  We dismiss the appeal but decline to order further sanctions.

---

[80] Real parties have requested a substantially higher amount in attorney's fees.  We have exercised our discretion to award a lower amount, however, in order to compensate the Bank and Kittleman for attorney's fees expended only in response to the mandamus and show cause order in this Court. This Court cautions Mr. Leas, however, that if any further filings are made with respect to trial court cause number C-3690-99-A, we reserve the right to increase this amount as appropriate.

[81] *See In re Guevara*, 41 S.W.3d at 174.

[82] *See id.*

[83] "Enough is enough!" *See Holloway v. Fifth Court of Appeals,* 767 S.W.2d 680, 686 (Tex. 1989) (orig. proceeding) (Gonzales, J. dissenting) (dissenting from the denial of a mandamus petition in a case that had been litigated for over ten years, stating "Ya Basta!").

As stated above, any appeal in this matter was required to have been filed following the April 29, 2002 order, which was the final judgment in this case. Because Twist abandoned the *Twist I appeal*, he has lost any available appellate remedy. Accordingly, we dismiss his appeal in cause number 13-06-00638-CV as untimely.

The Bank's motion for sanctions asserts: (1) that the appeal is untimely; (2) that Twist has pursued an appeal which he knew the Court did not have jurisdiction to hear; (3) that Twist failed to disclose to the Court the prior events in this case; (4) that Twist has ignored well-settled adverse law without arguing for a change in the law; (5) that Twist is attempting to present unpreserved error; and (6) that Twist is trying to re-litigate issues previously decided.

Texas Rule of Appellate Procedure 45 governs sanctions for a frivolous appeal.[84] It provides: "If the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals."[85] Because Twist has not filed appellate briefs requiring a response from the Bank, we decline to order sanctions in connection with the appeal.

## IV. CONCLUSION

---

[84] TEX. R. APP. P. 45.

[85] *Id.*

We deny the *Twist II Mandamus* in cause number 13-07-0105-CV and order sanctions as set forth above pursuant to Texas Rule of Appellate Procedure 52.11. We dismiss the *Twist II Appeal* in appellate cause number 13-06-638-CV as untimely and decline to order further sanctions in the appeal. No motion for rehearing in either cause number will be entertained.

LINDA REYNA YAÑEZ,
Justice

Vela, J., concurring in the result only,
without separate opinion.

Opinion delivered and filed this the
5th day of December, 2007.