

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00083-CV

Perla Ines **GUTIERREZ**,
Appellant

v.

Ruben Oscar **GUTIERREZ**,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2018FLA000140-D4
Honorable Oscar J. Hale, Jr., Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Patricia O. Alvarez, Justice
                Beth Watkins, Justice

Delivered and Filed: June 9, 2021

AFFIRMED

Marcel C. Notzon, III, attorney for Perla Ines Gutierrez, appeals an order imposing sanctions against him and ordering him to pay $3,000 to Martha Cigarroa, attorney for Ruben Oscar Gutierrez. We affirm.

### BACKGROUND

In early 2018, Perla hired Notzon to initiate divorce proceedings against her then-husband, Ruben. Ruben was represented by Cigarroa. Because Ruben was incarcerated, the case progressed slowly. Sometime after June 28, 2019, the parties entered into a Rule 11 Agreement which Perla,

Notzon, and Cigarroa signed. A month later, at a settlement conference hearing, Notzon reported that the parties were close to finalizing an agreement to settle the case.

According to Cigarroa, the court set a hearing for entry of the decree on December 9, 2019, but Perla failed to appear, so the court reset the matter for December 19, 2019. On December 9, 2019, Notzon also e-filed an "Agreed Final Decree of Divorce" which the trial court signed the following day. Although the decree was entitled "agreed," only Perla and Notzon had signed it.

On December 19—the day Cigarroa contends she discovered that the trial court had signed the agreed decree—Notzon filed a motion for sanctions seeking $25,000 from Cigarroa ("the $25,000 motion for sanctions"). He alleged Cigarroa had "lied and/or misrepresented facts to the Court" during a May 2019 hearing when she reported that she had travelled to the prison where Ruben was incarcerated but was not allowed to speak with him. Notzon also sought an order striking Ruben's defenses and pleadings and directing Cigarroa to pay all Perla's attorney's fees and expenses.

On December 23, 2019, Cigarroa served a subpoena on Perla, through Notzon, commanding her to attend a hearing on January 6, 2020 at 10:00 am before the 406th District Court. Cigarroa later explained her belief that Notzon had filed the $25,000 motion for sanctions without his client's consent. Notzon responded on December 23 by serving a subpoena duces tecum on Ruben, through Cigarroa, commanding Ruben's presence at the same hearing, and requiring the production of, inter alia, royalty checks, powers of attorney, and billing statements showing Cigarroa's travel time and visits at the jail with her client. In response, on December 27, Cigarroa filed a "Motion to Quash Subpoena and for Protective Order and for Sanctions Against Petitioner and Her Counsel" on behalf of her client. The motion to quash alleged that Ruben was unavailable to attend the hearing due to his incarceration, and that the subpoena duces tecum was brought in bad faith for several reasons including that it sought attorney-client privileged material

and documents that were no longer relevant because the parties had settled all issues in the case. The motion for sanctions contained in the motion to quash ("Ruben's first motion for sanctions") requested that Perla and Notzon pay Ruben's attorney's fees associated with the filing of the motion to quash as well as the defense of Notzon's $25,000 motion for sanctions. On January 2, 2020, Notzon filed a Motion to Quash Subpoena and Motion for Protective Order on Perla's behalf, and likewise sought to recover attorney's fees.

Although no signed fiat appears in the appellate record, the parties agree a hearing was set for January 6, 2020 at 10:00 a.m. On January 3, 2020, Notzon filed a "Notice of Passing" providing that Perla "hereby files . . . this Notice of Passing regarding her Motion for Sanctions Against Respondent and/or Counsel that is currently set for January 6, 2020 at 10:00 a.m." On the morning of January 6, Ruben filed an additional response to the $25,000 motion for sanctions. That response included a second request for sanctions ("Ruben's second motion for sanctions").

The court called the case on January 6 at 10:00 a.m. and Cigarroa appeared. When the court asked, "Where's Mr. Notzon?" the court coordinator responded, "[h]e was here in the courtroom, Judge, and I saw him walk out." Cigarroa informed the court about the Notice of Passing and that she had filed Ruben's first motion for sanctions before Notzon's Notice of Passing was filed. The trial court announced "[w]e'll give him a few minutes," then reviewed Cigarroa's privilege log.

When Notzon arrived a few minutes later, he argued he was authorized to unilaterally pass a hearing on a motion he had filed. The court disagreed, concluded that the additional relief requested in the motions to quash and Ruben's first and second motions for sanctions were also set to be heard, and recessed to allow Notzon to retrieve his file. During the hearing, the court repeatedly questioned whether Notzon had consent from his client to file the $25,000 motion for sanctions. Afterwards, the trial court signed an order:

1.  finding that all three motions for sanctions were set for January 6, 2020;

2.  finding that Ruben "need not comply with any matter requested in the subpoena, all requested discovery matters being either IRRELEVANT, MOOT AND/OR PRIVILEGED under Attorney/Client Communication protections";

3.  finding that Notzon "did not have his client's authority to prosecute the above post-judgment subpoena served on Ruben [] or to file and/or urge the [$25,000 motion for sanctions]"; and

4.  ordering Notzon to pay Cigarroa $3,000 for reasonable and necessary attorney's fees.

Notzon timely appealed in his own name.

**ANALYSIS**

***Right to Withdraw a Motion***

*Standard of Review*

In his first issue on appeal, Notzon contends the trial court erred in denying Perla "the right to control her own defense by failing to allow her to withdraw her own motion before it was heard." Generally, trial courts have wide discretion in managing their dockets to achieve "economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). We review a trial court's decisions on how to manage its docket for an abuse of discretion. *In re Guardianship of Patlan*, 350 S.W.3d 189, 195 (Tex. App.—San Antonio 2011, no pet) (reviewing complaint about trial court's refusal to continue a hearing for abuse of discretion).

*Applicable Law and Application*

Notzon argues the trial court abused its discretion by concluding that a motion cannot be unilaterally passed by the movant. For authority, he relies on *Rogers v. Clinton*, where the Texas Supreme Court recognized:

> We have held repeatedly that "a plaintiff's right to nonsuit of its own action exists at the moment a motion is filed, and that the only requirement is the mere filing of the motion with the clerk of the court." Analogously, a defendant's right to file a motion for new trial must certainly carry with it the right to *withdraw* that motion at

> any time before it is heard. A defendant must have the right to control his own defense.

794 S.W.2d 9, 11 (Tex. 1990) (internal citations omitted). As a preliminary matter, Notzon repeatedly informed the trial court he was *not* "nonsuiting" his motion—he simply did not want to move forward on the January 6 hearing the trial court set on it. Because Notzon expressly declined to abandon his motion, we find his reliance on *Rogers v. Clinton* inapposite.

Furthermore, five months after the supreme court issued its opinion in *Rogers v. Clinton*, it recognized, "[t]he plaintiff's right to take a nonsuit is *unqualified and absolute* as long as the defendant has not made a claim for affirmative relief." *BHP Petroleum Co., Inc. v. Millard*, 800 S.W.2d 838, 840 (Tex. 1990) (emphasis in original). Here, Notzon filed the $25,000 motion for sanctions on December 19. On December 27, Ruben filed his first motion for sanctions to recover the attorney's fees he incurred partly as a result of the $25,000 motion for sanctions. Notzon did not file his Notice of Passing until January 3. Because Ruben had made a claim for affirmative relief before Notzon filed his Notice of Passing, the trial court did not abuse its discretion in requiring Notzon to go forward with the hearing set for January 6. *See Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 37 (Tex. 2008) ("Parties have an absolute right to nonsuit *their own* claims, but not *someone else's* claims they are trying to avoid.") (emphasis in original).

We overrule Notzon's first issue on appeal.

### *Lack of Notice*

#### *Standard of Review*

Next, Notzon argues that Ruben did not file his motion for sanctions until the morning of the hearing, so the trial court denied him due process by assessing sanctions against him without affording him time to prepare and present a defense. We review an allegation that the trial court

deprived a litigant of notice of a hearing for an abuse of discretion. *See Buruato v. Mercy Hosp. of Laredo*, 2 S.W.3d 385, 387–88 (Tex. App.—San Antonio 1999, pet. denied).

*Applicable Law and Application*

On appeal, Notzon relies on Texas Rule of Civil Procedure 21, which requires that all parties be served with a motion and notice of any hearing on the motion at least three days prior to the hearing. TEX. R. CIV. P. 21. He argues the only matter set for hearing on January 6, 2020 was his $25,000 motion for sanctions, and that Ruben's motion to quash was never set for a hearing. He contends Ruben did not request sanctions until the morning of the hearing, after the Notice of Passing was filed. Finally, he contends Ruben's motion to quash "dealt only with the subpoena duces tecum that became moot with the filing of the Notice of Passing on January 3, 2020."

We disagree. Notzon's argument on this point focuses solely on Ruben's *second* motion for sanctions. However, Ruben's first motion for sanctions, which he filed December 27, 2019, requested:

> that this Court order Petitioner and her attorney to pay Mr. Gutierrez's attorney's fees which have been and will be incurred in the filing of the motion herein and the prosecution and defense of this motion as well as the Baseless Motion.

Ruben defined "the Baseless Motion" as the $25,000 motion for sanctions Notzon filed on December 19, 2019. Because Ruben filed his first motion for sanctions more than three days before the January 6 hearing on Notzon's $25,000 motion for sanctions, the trial court did not violate Rule 21(a). *See* TEX. R. CIV. P. 21(a); *see also Buruato*, 2 S.W.3d at 387.

Notzon also argues he received inadequate notice that Ruben's motions for sanctions would be set at the same time as his own $25,000 motion for sanctions. The general rule requires three days' notice of a hearing. However, that time can be "shortened by the court," and a request for

relief even can be "presented during a hearing or trial." TEX. R. CIV. P. 21(b); *Twist v. McAllen Nat'l Bank*, 248 S.W.3d 351, 361 (Tex. App.—Corpus Christi–Edinburg 2007, no pet.).

Here, the parties agree Notzon's $25,000 motion for sanctions was initially set for a hearing January 6. Ruben filed his first and second motions for sanctions in response to the $25,000 motion for sanctions Notzon filed. Especially considering the broad discretion trial courts have in managing their dockets, we cannot say the trial court abused its discretion in considering the motions Ruben filed in response to Notzon's $25,000 motion for sanctions at the same time it considered the $25,000 motion for sanctions itself. *State v. Gaylor Inv. Tr. P'ship*, 322 S.W.3d 814, 819 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Every trial court has the inherent power to control the disposition of the cases on its docket 'with economy of time and effort for itself, for counsel, and for litigants.'") (quoting *Landis*, 299 U.S. at 254).

We overrule Notzon's second issue on appeal.

### Court as Advocate

*Standard of Review*

In his final issue, Notzon argues the trial court stepped into the role of advocate when it instructed Notzon how to present his case. To reverse a judgment on the ground of improper conduct or comments of the judge, we must find both that judicial impropriety occurred and that the complaining party suffered harm. *Kroger Co. v. Milanes*, 474 S.W.3d 321, 344 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Silcott v. Oglesby*, 721 S.W.2d 290, 293 (Tex. 1986)).

*Applicable Law and Application*

Notzon argues the trial court erred in not allowing him to call Cigarroa to the stand and in "demand[ing] that [Notzon] call his client on the phone so that the trial court could examine her." He contends that because his client instructed him to pass the hearing, he could not "act as advocate

for his client and advocate for himself at the same time." He claims he was harmed because, as a result of the trial court's erroneous conduct, he put on no evidence at all.

When Notzon attempted to call Cigarroa to the stand, the court asked what he hoped to establish through her testimony. Notzon answered that he wanted to know "when was she [at the prison where Ruben was incarcerated]? Who did she talk to? What did they tell her?" The court expressed its skepticism that Perla would be concerned about any issues surrounding the prison visit because the case had already settled on terms Perla agreed to. The court continued, "[b]y forcing [Cigarroa] to take the stand as a witness, that would be possibly adding to the harassment that she's complaining about today. So I want to make sure, first of all, that this is in fact being urged on behalf of Ms. Perla Gutierrez." The court conditioned its decision on whether Cigarroa would testify on evidence from Perla that she, in fact, had urged Notzon to file the $25,000 motion for sanctions. When the court asked that question of Notzon, he was unable to give a consistent answer.

Under the Texas Rules of Evidence, the trial court "should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." TEX. R. EVID. 611(a). Here, the record demonstrates the trial court's attempts to determine the truth of whether Perla had instructed Notzon to file the $25,000 motion for sanctions, to avoid wasting time litigating tangential issues in a case that had already settled, and to protect Cigarroa from harassment. In these circumstances, we cannot say that the trial court's conduct during the January 6, 2020 hearing established judicial impropriety. *See Kroger*, 474 S.W.3d at 344.

We overrule Notzon's third and final issue on appeal.[1]

**CONCLUSION**

We affirm the trial court's January 6, 2020 Order, Findings and Award of Attorney Fees.

Beth Watkins, Justice

---

[1] On appeal, Ruben presents a cross-point containing an alternative reason for affirming the trial court's order. Because we have overruled each of Notzon's arguments on appeal, we need not reach Ruben's cross-point. *See, e.g., Newpark Mats & Integrated Servs., LLC v. Cahoon Enters., LLC*, 605 S.W.3d 671, 682 n.9 (Tex. App.—Houston [1st Dist.] 2020, no pet.).