**The STATE of Texas, Appellant,**

v.

**Guadalupe MACIAS, Appellee.**

**No. 04–89–00259–CR.**

Court of Appeals of Texas, San Antonio.

June 13, 1990.

Discretionary Review Refused Sept. 26, 1990.

Fred G. Rodriguez, Dan Maeso, Juan Chavira, Laura Booras, Criminal Dist. Attys., San Antonio, for appellant.

Lawrence L. Garcia, John Wilkerson, San Antonio, for appellee.

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

Before BUTTS and PEEPLES, JJ., and ONION, Assigned Justice.

## OPINION

ONION, Justice.[1]

This is an appeal by the State from an order granting a motion for new trial. *See* TEX.CODE CRIM.PROC.ANN. art. 44.-01(a)(3) (Vernon Supp.1990); TEX. CONST. art. V, § 26 (Vernon Supp.1990).

The State advances two points of error. First, it contends the trial court erred in granting appellee's motion for new trial because the evidence was sufficient to show "that appellee was appointed a possessory conservator, as alleged in the indictment, by oral rendition of an order by Judge Rickhoff." Second, it urges the trial court erred in granting the motion for new trial "because the evidence showed that appellee voluntarily assumed the status of a possessory conservator, making Judge Rickhoff's appointment valid by virtue of principles of estoppel." These are the only two points of error involved in this appeal by the State.

The indictment charged the appellee Guadalupe Macias with the murder by omission of Sarah Macias [2], a child, in one count, and in two counts with injury to a child by omission. *See Florio v. State,* 784 S.W.2d 415 (Tex.Crim.App.1990); *Billingslea v. State,* 780 S.W.2d 271 (Tex.Crim.App.1989). Each count alleged the offense occurred on or about December 29, 1987, and further alleged that the appellee had been previously appointed the possessory conservator of the child. The murder count and the first injury to a child count alleged that the appellee as possessory conservator had the duty to protect and care for the complainant but knowingly and intentionally failed to protect the complainant by failing to remove the complainant from the presence and habitation of [appellee's husband] Raymond Macias, Sr., knowing that the complainant has sustained bodily injury and

2. The indictment alleges the name of the deceased as Sarah Macias. Other exhibits from the civil action reflects the name of Sara Melissa Macias.

serious bodily injury as a result of assaults committed by the said Raymond Macias, Sr. The second injury to a child count alleged that the appellee, having been appointed possessory conservator, engaged in conduct that caused serious bodily injury to the complainant by failing to secure proper medical care for the complainant after it became apparent because of injuries that the complainant required medical care. Thus, the fact of appointment as possessory conservator, pursuant to TEX.FAM. CODE ANN. § 14.03(a) (Vernon 1986), was an essential element of the offenses alleged.

At the conclusion of the guilt stage of the trial, the jury returned two verdicts, one finding the appellee guilty of murder as charged, and another, a general verdict finding the appellee guilty of injury to a child "as charged in the indictment." The court, having been elected to assess punishment, ordered a pre-sentence investigation. Prior to sentencing the appellee filed a motion for new trial. TEX.R.APP.P. 30(b)(9). It was her contention that the evidence was insufficient to show that appellee was appointed a possessory conservator of the deceased. The trial court granted the motion for new trial, and the State gave notice of appeal.

Alberto and Janie Macias were the parents of Sarah Macias, the deceased, born April 19, 1987. The Texas Department of Human Services had been appointed temporary managing conservator of the couple's three other children, who had been placed in foster homes. On September 29, 1987, the Department of Human Services filed an amended petition in the original suit (affecting the parent-child relationship) to request that it also be appointed temporary managing conservator of Sarah Melissa Macias. Before service was obtained the parents placed Sarah in the home of Raymond and Guadalupe Macias, the appellee herein. Raymond Macias was the brother of Alberto Macias, the deceased's father. After one resetting, a hearing on the amended petition was heard in the 289th District Court on October 26, 1987. No action was taken because a question arose as to whether Raymond Macias and his wife, the appellee, had been appointed guardians of Sarah by another court. That question having been resolved in the negative, another hearing on the amended petition occurred on November 2, 1987. It is on the basis of this hearing that the State, in the instant case, stakes its claim that Raymond and Guadalupe Macias were appointed temporary possessory conservators of Sarah Macias, and that they occupied such roles on December 29, 1987, the date of Sarah Macias' death. Raymond Macias is now serving a life sentence for the murder of Sarah Macias according to this record.

The State candidly admits that there was no written judgment or order rendered or filed appointing the Department of Human Services as temporary managing conservator of Sarah Macias, or appointing Raymond and Guadalupe Macias as temporary possessory conservators. The State takes the position, however, that Judge Tom Rickhoff of the 289th District Court did on November 2, 1987, orally make such appointments in open court and the same constitute the judgment and order of the court in such matter.

The transcription of the court reporter's notes reflects that on November 2, 1987, in Cause No. 86–PA–01106, the Department of Human Services, the minor child and the parents, Alberto and Janie Macias, were represented by attorneys. Raymond Macias was not present, but Guadalupe Macias was present with Sarah Macias, but without counsel. The proceedings appear to have been conducted in an informal colloquy at the bench.

The attorney for the Department of Human Services indicated to the court that *"the Department* has reached an agreement" (emphasis supplied). The record then reflects:

> MS. HACKETT (caseworker): *We* have agreed to place Sarah with the paternal aunt and uncle pending a home study.
>
> THE COURT: The uncle in the wheelchair?
>
> MS. LUPE MACIAS: Yes.

. . . .

THE COURT: . . . and you're the wife of the man who was here, the very nice man who was here who was Albert's brother?

MS. LUPE MACIAS: Uh-huh.

. . . .

MR. BOWLES (Attorney Ad Litem for Minor Child): Lupe, I would like to ask you on the record, last week when this same agreement was suggested to Raymond he indicated that he would like to speak with his attorney before he agreed or disagreed. You don't have an attorney here today, but have you and Raymond had an opportunity to talk to an attorney?

MS. LUPE MACIAS: Yes.

MR. BOWLES: And you understand that in taking physical possession of the child that the Department has legal custody for six months and they are going to be looking in on you and the child and you agree to cooperate with them?

MS. LUPE MACIAS: Yes.

. . . .

MR. GUERRERO (attorney for parents Alberto and Janie Macias): . . . The home study to be made, I want to make sure it's not only for Sarah, but

. . .

MR. YOUNG (attorney for the Department of Human Services): We'll bring in an order regarding placement of the child later, your Honor, without having to have another hearing on this *if all the parties are in agreement with it* (emphasis supplied).

THE COURT: Okay. Take care of little Sarah. And of course the parents will be interviewed.

After some mention of child support matters and visitation rights, the court indicated those "should be spelled out one, two, three, four," but "they are related and should be able to get along." The court concluded the hearing with "Take care of

our little sweetheart." [3] The record does not reflect that an agreement was handed to the trial court or dictated into the record. Consent by all of the parties to any specified agreement is not shown.

Judge Tom Rickhoff testified it was his impression that he was presented with an agreement, and that he ordered the Department to take managing conservatorship and that Raymond and Guadalupe Macias were to have possessory conservatorship. He added, "But I'd have to read this [transcript] to see who was in agreement and who wasn't, but generally it was my impression that agreement was reached. I have to read all of this to find out." He testified as to the accuracy of the transcription and repeatedly referred to the same in answering questions. When it was pointed out that there were no specific words in the transcription showing any appointment of Raymond and Guadalupe Macias as possessory conservators, Judge Rickhoff asked to examine the same and stated, ". . . I don't see that in the transcript. . . ." Notations on the case jacket were called to Judge Rickhoff's attention and he explained they were mostly notes to himself, and that none of the notations reflected the appointment of possessory conservators. He could not recall that any written order had been rendered or entered. The State then stipulated that no written order appointing possessory conservators had been presented to the court.

"The rendition of a judgment is the pronouncement by the court of its conclusions and decision upon the matter submitted to it for adjudication" which "may be oral as well as written." *Knox v. Long,* 152 Tex. 291, 257 S.W.2d 289, 292 (1953). "A judgment is rendered when the decision is officially announced, either orally in open court or by a memorandum filed with the clerk" of the court. *Ayala v. Minniti,* 714 S.W.2d 452, 456 (Tex.App.—Houston [1st Dist.] 1986, no writ); *Flores v. Onion,* 693 S.W.2d 756, 757 (Tex.App.—San Antonio

---

**3.** In response to the State's argument during trial, the trial judge asked:

"What language of Judge Rickhoff's do you point to as having been the rendition of judg-

ment? I have read the transcript of that hearing about fifteen times now and I'm still trying to find that, frankly."

1985, no writ); *Novotny v. Novotny*, 665 S.W.2d 171, 173 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). "The entry of the judgment is the ministerial act which furnishes enduring evidence of the judicial act of rendition." *Eastin v. Eastin*, 588 S.W.2d 812, 814 (Tex.Civ.App.—San Antonio 1979, writ dism'd). Thus, rendition is distinguishable from the entry of judgment, a purely ministerial act. *Ex parte Gnesoulis*, 525 S.W.2d 205, 209 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ).

■ The judge's intention to render judgment in the future cannot be a present rendition of judgment. "The rendition of judgment is a present act, either by spoken word or signed memorandum, which decides the issues upon which the ruling is made." *Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex.1976); *Formby's KOA v. BHP Water Supply Corp.*, 730 S.W.2d 428, 430 (Tex.App.—Dallas 1987, no writ).

■ The general rule is that an agreement for judgment, like other agreements in a pending lawsuit, will ordinarily not be enforced "unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX.R.CIV.P. 11; *Kennedy v. Hyde*, 682 S.W.2d 525, 528–29 (Tex.1984). Further, a judgment cannot be rendered on an agreement even if it complies with TEX.R.CIV.P. 11, after any party bound by the agreement has withdrawn consent to the agreement before the judgment is rendered. *Id.; Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex.1983).

■ In the instant case, there was no written judgment or order appointing a managing conservator, temporary or otherwise, and in addition appointing possessory conservators. Possessory conservators are creatures of statute, and possessory conservators may be appointed only if a managing conservator is first appointed. TEX. FAM.CODE ANN. § 14.03(a) (Vernon 1986). The State relies upon the claim that an oral order was rendered at the hearing on November 2, 1987. "Oral rendition is proper under the present rules, but orderly administration requires that form of rendi-

tion to be in and by spoken words, not in mere cognition, and to have effect only insofar as those words state the pronouncement to be a present rendition of judgment." *Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex.1976). The record does not support an oral pronouncement by the court upon the matters submitted to it for adjudication. The trial judge did not, in so many words, say that a judgment or order was rendered or appointments made. The State urges, however, that the record reflects an agreement for a judgment. Even if there was any form of agreement, it was not in compliance with Rule 11. Further, "notwithstanding a valid Rule 11 agreement, consent must exist at the time an agreed judgment is rendered." *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex.1984); *see also Buffalo Bag Co. v. Joachim*, 704 S.W.2d 482, 483 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Consent to a specific agreement on November 2, 1987, was not shown.

Moreover, the record clearly indicates an intention to render a judgment or order in the future. The trial judge stated he wanted a home study "that will allow me to make any decision necessary," and that the parents "will be interviewed." Further, Judge Rickhoff made a note on the case jacket that the paternal uncle (Raymond Macias) should be interviewed. The attorney for the Department of Human Services indicated an intention to bring in an order in the future "if all the parties are in agreement with it." It should be remembered that the rendition of a judgment is a present act, not a future one. *Formby's KOA v. BHP Water Supply Corp.*, 730 S.W.2d 428, 430 (Tex.App.—Dallas 1987, no writ). The evidence does not show the rendition of a judgment, oral or written, appointing Guadalupe Macias a possessory conservator as alleged in the indictment.

■ A motion for new trial based on the insufficiency of the evidence presents a legal rather than a factual question; therefore, the trial court must apply the same legal test employed on appeal—that is, whether, viewing the evidence in the light most favorable to the verdict, any rational

trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. *State v. Daniels*, 761 S.W.2d 42, 46 (Tex.App.—Austin 1988, pet. ref'd). Applying such standard, it is clear that a rational trier of fact could not have found beyond a reasonable doubt that appellee herein was appointed a possessory conservator. The trial court did not abuse its discretion in granting the motion for new trial on the basis of the insufficiency of the evidence to sustain the conviction. The State's first point of error is overruled.

■ In its second point of error, the State urges the trial court erred in granting the motion for new trial "because the evidence showed that appellee voluntarily assumed the status of a possessory conservator, making Judge Rickhoff's appointment valid by virtue of principles of estoppel." First, this point of error assumes that an appointment was made. Next, the complaint presented for the first time on appeal, was never presented to the trial court. Nothing is preserved for review. The State merely argues that since the appellee and her husband took possession of Sarah Macias with the child's parents' consent prior to any court proceedings, and that subsequent to November 2, 1987, appellee attended a Department of Human Services meeting, she is estopped from asserting she was not a possessory conservator. Given the circumstances, we fail to perceive the basis for the State's claim. *See generally*, 34 TEX.JUR.3d *Estoppel* §§ 1–23 (1984). The State's second point of error is overruled.

The order granting the appellee's motion for new trial is affirmed, and the cause is remanded.