

NUMBER 13-11-00282-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

---

HEBLEN KANAN, PHARR PLANTATION,
INC., AND PHARR PLANTATION
MANAGEMENT CO., LTD.,                                    Appellants,

v.

PLANTATION HOMEOWNER'S
ASSOCIATION INC., ET AL.,                                Appellees.

---

On appeal from the County Court at Law No. 1
of Hidalgo County, Texas.

---

## OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Opinion by Chief Justice Valdez**

Appellants, Heblen Kanan, Pharr Plantation, Inc., and Pharr Plantation

Management Co., Ltd., have appealed a judgment rendered on March 29, 2011, in trial

court cause number CL-07-0468-A in the County Court at Law Number One of Hidalgo

County, Texas.  By one issue with multiple sub-issues, appellants contend that the trial court erred in entering judgment on an unenforceable settlement agreement.  We affirm.[1]

## I. BACKGROUND

The underlying lawsuit involves a dispute over ownership and management of the Plantation South Subdivision in Hidalgo County, Texas.  Pharr Plantation, Inc. ("Plantation"), as owner of the subdivision, and Pharr Plantation Management Co. ("Management"), as manager of the subdivision, brought a suit for declaratory relief against Pharr Plantation Homeowners Association, Inc. and individual property owners[2] (collectively "Homeowners") in the subdivision.  Plantation alleged that it had sole authority and power to manage the subdivision through Management as opposed to the Homeowners.  In their pleadings, Plantation and Management sought declaratory and injunctive relief, damages and exemplary damages, and to remove the cloud on title and to quiet title.

---

[1] The Court has previously affirmed in part and reversed in part an order regarding supersedeas in this case, *see Kanan v. Plantation Homeowner's Ass'n*, No. 13-11-00282-CV, 2012 Tex. App. LEXIS 1458, at *1 (Tex. App.—Corpus Christi Feb. 21, 2012, no pet.) (mem. op. on order), and denied a petition for writ of mandamus filed by appellants on these issues on grounds that these matters were subject to review in the related appeal.  *See In re Pharr Plantation Mgmt. Co.*, No. 13-11-00548-CV, 2012 Tex. App. LEXIS 300, at **5–6 (Tex. App.—Corpus Christi Jan. 12, 2012, orig. proceeding) (per curiam mem. op.).  On November, 7, 2012, the Court also abated this appeal for the purposes of mediation and directed the parties to notify the Court regarding the results of mediation.  By letter dated December 17, 2012, this Court requested that the parties advise of the results of mediation by December 27, 2012.  The parties did not respond.  By letter dated January 15, 2013, the Court again requested that the parties advise the Court regarding the results of mediation by no later than January 25, 2013 and informed the parties that if we heard nothing from the parties regarding the results of mediation by that date, the appeal would be reinstated on the Court's docket.  The parties have not notified the Court regarding the mediation results and accordingly, the appeal is reinstated.

[2] The individuals involved in this lawsuit are:  D'Wayne De Ziel, Elaine De Ziel, Owen Bohnsack, Lee Albert, Maddy Mann, Fred Wiegand, Eva Maria Ellrich, George Rolando, Nathalie Watteau Vera, Rosie Reyna, Christine Cabrera, Paul Smith, Lila Reiser, George Johnston, Jim Woltz, Marjorie Nichols, Sandy Gonzalez, Peggy Boos, Norma Holiday, and David Coers.

In response, Homeowners filed a counterclaim against Plantation and Management and a third party petition against Heblen Kanan, whom Homeowners alleged was the "alter ego" of Plantation and Management. The Homeowners alleged that Plantation, Management, and Kanan breached their duty to manage the subdivision and collect assessments and brought suit against them for negligence, breach of fiduciary duty, breach of the duty of good faith and fair dealing, fraud, mismanagement, conversion, and for failing to enforce restrictive covenants and the subdivision's rules and regulations. They sought declaratory and injunctive relief and damages. The specific issues between the parties generally concerned who had the right to manage the subdivision, collect assessments from homeowners, and exercise control over common areas such as the subdivision's recreation room and ballroom.

On February 1, 2011, the trial on the merits began. Appellants presented their case for approximately five days. On February 8, 2011, the parties recessed the trial, excused the jury, and orally stated a settlement agreement on the record before the trial court. The reporter's record shows the following:

THE COURT: All right. I understand that you have pretty much resolved all issues with the exception of one issue that is still outstanding.

Now, do you want to just tell the Court —

COUNSEL FOR APPELLANTS: That is correct.

THE COURT: —which that issue is so that I can make a determination on that issue?

COUNSEL FOR APPELLEES: Yes, [y]our Honor. Mr. Kanan, as he testified, and Michelle Huebe [3]—they testified there are seven lots where either they or their family members live that are not paying assessments, and we have agreed that we, as the homeowners association, will waive

---

[3] According to the record, Huebe worked for Management and supervised employees of the subdivision's recreation center..

3

any past due assessments that may be owed on those seven lots. But the disagreement is we want them to start paying assessments beginning March 1st, and Mr. Mancias' clients want to not pay assessments until three years from now.

COUNSEL FOR APPELLANTS: That is the disagreement, Judge.

THE COURT: That is the disagreement, and that is more of a legal issue that the Court would have to address —

COUNSEL FOR APPELLANTS: It is.

THE COURT: — as to the payment of those — of these seven lots?

COUNSEL FOR APPELLANTS: Yes.

THE COURT: All right. And that is what is basically keeping it from getting resolved?

COUNSEL FOR APPELLEES: I think so, Your Honor.

THE COURT: All right. I will make a decision on that, and then just all other matters being resolved I will make a decision on this and the case will be over and done with.

. . . .

THE COURT: All right. Ladies and gentlemen, it is my understanding that there is an agreement with the exception of one issue that I am going to make a decision on right now. I will allow your attorney . . . to read it into the record as far as the agreement so that we can have it on the record, and then this case should be over and done with.

. . . .

THE COURT: All right. The issue with respect to the seven lots — the plaintiff is offering to pay until three years from now and the defendants want it to be paid immediately. The decision of the Court will be that he start[s] paying in one year and a half. All right. So he does not get what he wants. You know, it is halfway. In one year and a half, he needs to — he will have to start paying as opposed to three years.

All right. I am going to allow you to read the agreement into the record. . . .

. . . .

4

COUNSEL FOR APPELLEES: . . . The homeowners association will take over control of the common areas and collecting the assessments and the expenditures on March 1, 2011. An election of all officers and directors for the homeowners association will take place in December of 2011. At the election, Heblen Kanan or any of his entities will not have a vote at the election.

The title to the rec hall or those ballrooms will be transferred by warranty deed transferring clear title to the rec room and ballrooms to the Plantation Homeowners Association. The warranty deed will have a reservation that Mr. Kanan or Pharr Plantation, Inc. will have the right to use the rec hall on Friday nights and Saturday nights for three years. The homeowners association will . . . have the right to use the rec hall the way they had been doing it in the past, either on Friday morning or Saturday morning, for their pancake meetings or some meetings that they have, and the meetings generally end around 9:00 or 9:30. And by 11:00, they should be available for Mr. Kanan to use when they clean everything up.

Mr. Kanan or his entities will not take any funds from the assessments to pay any debts that he claims is owed to him. Mr. Kanan or his entities use the ballroom on Friday night or Saturday night for those three years, the — any expenses or — and/or utilities will be prorated between the homeowners association and Mr. Kanan or his entity.

And as the Court has mentioned, those seven lots that do not pay assessments right now, as Mr. Kanan and Michelle Huebe testified, will not owe any past due amounts and will not start incurring assessments until one year and a half from now.

All employees of the management company will be paid up until March 1, 2011 and will be terminated as of February 28, 2011.

There is an office on the right side as you go into the ballroom, and that is the office that Mr. Kanan will be able to use during those three years to manage the ballrooms.

This will be a complete settlement for all parties. Each party will pay their own attorney's fees. Any equipment, computers, telephone systems and security system that are on the property/common areas shall remain on the property and will be owned by the homeowners association.

At this point in the proceedings, the individual homeowners raised various questions regarding the scope of the settlement. One question that was raised

concerned Kanan's right to use the recreation room and ballroom on nights other than Friday or Saturday, the right to profits from such use, and scheduling usage of the recreation room and ballroom between the parties on those nights. After some colloquy between the parties, counsel, and court, it was determined that Kanan could use the recreation room and ball room on other nights of the week when nothing was otherwise scheduled and retain the profits, and that the parties bore equal responsibility for communicating an effective calendar for use of the property. It was also determined that the homeowners association could similarly use the recreation room and ball room on Friday and Saturday nights that Kanan did not schedule events. At the conclusion of the hearing, the homeowners and Kanan agreed to the settlement, and the court "noted on the record that it is an agreed settlement by all parties involved and their attorneys are present." The court directed the parties to "work on the basic . . . description of what you agreed and put it in writing, and I will approve it and sign it."

On March 1, 2011, the day that the parties had agreed that the homeowners association was going to take control over the common areas and collecting assessments, appellants filed an emergency motion to abate enforcement of the agreement. According to the motion to abate, appellees had "unilaterally interpreted the vague and overbroad language read into the record . . . as a basis for their one sided actions to interfere with access to the subdivision." Appellants further complained that appellees had improperly begun to set up committees and procedures for an upcoming election and that the homeowners association was not "legally created." In response, on March 3, 2011, appellants filed a motion to enforce settlement agreement and for

6

temporary injunction. On March 15, 2011, appellants filed "Plaintiffs' Revocation of Purported Agreement."

The trial court held a hearing on the foregoing matters on March 15, 2011 and took these issues under advisement. Both appellants and appellees submitted supplemental briefing. On March 24, 2011, the trial court entered judgment on the settlement agreement. The judgment provides, in pertinent part:

> After considering the pleadings on file and the argument of counsel, it appears to the Court that the parties entered into a binding Rule 11 Settlement Agreement on February 8, 2011. Plaintiffs/Counter-Defendants/Third Party Defendant[s] PHARR PLANTATION MANAGEMENT CO., LTD, PHARR PLANTATION, INC., AND HEBLEN KANAN, having withdrawn their consent to an agreed judgment, the Court is prohibited from entering an agreed judgment; however, the Court can enter judgment enforcing the Rule 11 Settlement Agreement and rule that the Rule 11 Settlement Agreement is a complete bar to all causes of action pending in this cause, except for the enforcement of the Rule 11 Settlement Agreement.
>
> The Court hereby takes judicial notice of the Settlement Agreement dictated into the record on February 8, 2011, and of the transcript of said hearing attached to the Motion to Enforce Settlement Agreement and to the Brief in Support of Judgment Enforcing Settlement Agreement filed by PLANTATION HOMEOWNERS ASSOCIATION, INC., et al. The Court finds that the Settlement Agreement is not ambiguous and contains all of the material terms agreed to by the parties. The Court considers the arguments of counsel and the pleadings of Plaintiffs/Counter-Defendants/Third Party Defendant[s] PHARR PLANTATION MANAGEMENT CO., LTD, PHARR PLANTATION, INC., AND HEBLEN KANAN wherein they admit that they have breached the Settlement Agreement by their revocation of the Settlement Agreement.

The judgment recites that the settlement agreement was a binding Rule 11 Agreement and includes specific recitals incorporating the detailed terms of the agreement.

Appellants raise one issue with multiple sub-issues. By their main issue, appellants contend the trial court abused its discretion by granting appellees' motion to enforce settlement, denying appellants' motion for new trial, and rendering judgment on

the parties' agreement because the agreement fails to comply with Rule 11 of the Texas Rules of Civil Procedure. By six sub-issues, appellants contend that the Rule 11 Agreement is not enforceable because: (1) appellants revoked their consent to it before the trial court rendered judgment; (2) it does not comply with basic contract law principles; (3) it was made orally but purports to pass title to property; (4) it was made orally but is not to be performed within one year; (5) the trial court, rather than the parties, supplied the terms and details of the agreement; and (6) appellees failed to provide proper pleading and proof.

## II. APPLICABLE LAW

Rule 11 of the Texas Rules of Civil Procedure states, "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11; *see Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519, 525 (Tex. App.—Fort Worth 2011, pet. denied). Rule 11 agreements "are contracts relating to litigation." *Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 914 (Tex. App.—Austin 2010, no pet.). A settlement agreement must comply with Rule 11 to be enforceable. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995); *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex. 1984); *Broderick v. Kaye Bassman Int'l Corp.*, 333 S.W.3d 895, 904–05 (Tex. App.—Dallas 2011, no pet.).

The rule is an effective tool for finalizing settlements by objective manifestation so that the agreements themselves do not become sources of controversy. *Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 768 (Tex. 2007). The purpose of Rule 11 is

8

to ensure that agreements of counsel affecting the interests of their clients are not left to the fallibility of human recollection and that the agreements themselves do not become sources of controversy. *Padilla*, 907 S.W.2d at 464 (Enoch, J., dissenting); *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 309 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The filing requirement creates the imprimatur of a court record. *Kennedy*, 682 S.W.2d at 528; *ExxonMobil Corp.*, 174 S.W.3d at 309. A trial court has a ministerial duty to enforce a valid Rule 11 agreement. *In re Guardianship of White*, 329 S.W.3d 591, 592 (Tex. App.—El Paso 2010, no pet.); *Scott-Richter v. Taffarello*, 186 S.W.3d 182, 189 (Tex. App.—Fort Worth 2006, pet. denied); *ExxonMobil Corp.*, 174 S.W.3d at 309.

As with any other contract, our primary objective in construing a Rule 11 agreement is to ascertain and give effect to the intentions the parties have objectively manifested in the written instrument. *Trudy's Tex. Star, Inc.*, 307 S.W.3d at 914; *see also State Farm Lloyds v. Gulley*, No. 04-12-00057-CV, 2012 Tex. App. LEXIS 7515, at **10–11 (Tex. App.—San Antonio Sept. 5, 2012, no pet.). We interpret Rule 11 agreements based on the intention of the parties from the language of the entire agreement in light of the surrounding circumstances, including the state of the pleadings, the allegations therein, and the attitude of the parties with respect to the issues. *Garza v. Villarreal*, 345 S.W.3d 473, 479 (Tex. App.—San Antonio 2011, pet. denied).

### III. COMPLIANCE WITH RULE 11

By their main issue, appellants contend the trial court abused its discretion by granting appellees' motion to enforce settlement, denying appellants' motion for new

9

trial, and rendering judgment on the parties' agreement because the agreement fails to comply with Rule 11 of the Texas Rules of Civil Procedure. In connection with this issue, appellants contend that the settlement agreement was not "entered of record" before it was sought to be enforced. In short, appellants contend that the phrase "entered of record" means that a Rule 11 Agreement must be described in a judgment or court order prior to attempts to enforce it. Appellants assert that *City of Houston v. Clear Creek Basin Authority* supports their assertion. 589 S.W.2d 671 (Tex. 1979). In that case, the Texas Supreme Court held that "Rule 11 is satisfied if the oral waiver or agreement made in open court is described in the judgment or an order of the court. Rule 11 expressly approves this procedure." *Id.* at 677.

We disagree with appellants' interpretation of Rule 11 and that *City of Houston* supports their argument. Rule 11 provides that agreements "between attorneys or parties touching any suit pending" will be enforced where "made in open court and entered of record." TEX. R. CIV. P. 11. To be "entered of record" includes the dictation of the agreement into the trial court record. *See, e.g., Sitaram v. Aetna U.S. Healthcare*, 152 S.W.3d 817, 824 (Tex. App.—Texarkana 2004, no pet.). Specifically, the requirements for a Rule 11 agreement are satisfied "when the terms of the agreement [are] dictated before a certified shorthand reporter, and the record reflect[s] who [is] present, the terms of the settlement, and the parties' acknowledgement of the settlement." *Cantu v. Moore*, 90 S.W.3d 821, 824 (Tex. App.—San Antonio 2002, pet. denied); *see also Juarez v. Laredo Inv. Props.*, No. 04-10-00821-CV, 2011 Tex. App. LEXIS 7616, at **8–9 (Tex. App.—San Antonio Sept. 21, 2011, no pet.) (mem. op.); *Columbia Rio Grande Healthcare, L.P. v. De Leon*, No. 13-09-00496-CV, 2011 Tex.

App. LEXIS 431, at *10 (Tex. App.—Corpus Christi Jan. 20, 2011, no pet.) (mem. op.). The settlement agreement orally dictated to the trial court in this case meets these requirements. Accordingly, we overrule appellants' main issue.

## IV. REVOCATION

By their first sub-issue, appellants contend that the Rule 11 Agreement is not enforceable because the trial court rendered judgment on the Rule 11 Agreement after appellants revoked consent to the agreement. According to appellants, the terms of the Rule 11 Agreement were read into the record on February 8, 2011, they revoked consent on March 15, 2011, and the trial court did not render judgment until March 29, 2011. Appellants cite *Moseley v. Emco Machine Works Co.*, 890 S.W.2d 529 (Tex. App.—El Paso 1994, no writ), in support of their contention that a judgment cannot be rendered on an agreement, even one entered in compliance with Texas Rule of Civil Procedure 11, when a party withdraws consent to the agreement before the judgment is rendered. *See id.* at 531; *see also State v. Macias*, 791 S.W.2d 325, 329 (Tex. App.—San Antonio 1990, pet. ref'd).

Even where parties enter into a valid Rule 11 agreement to settle a case, the parties must consent to the agreement at the time the trial court renders judgment. *Kennedy*, 682 S.W.2d at 528; *see Burnaman v. Heaton*, 150 Tex. 333, 240 S.W.2d 288, 291 (1951). The trial court cannot render an agreed judgment after a party has withdrawn its consent to a settlement agreement. *Padilla*, 907 S.W.2d at 461–62; *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983). "When a trial court has knowledge that one of the parties to a suit does not consent to a judgment, the trial court should refuse to sanction the agreement by making it the judgment of the

11

court." *Quintero*, 654 S.W.2d at 444; *Burnaman*, 240 S.W.2d at 291; *see Gamboa v. Gamboa*, 383 S.W.3d 263, 269 (Tex. App.—San Antonio 2012, no pet.).

Nevertheless, a written settlement agreement may be enforced as a contract even though one party withdraws consent before judgment is rendered on the agreement. *Mantas v. Fifth Ct. of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996); *Padilla*, 907 S.W.2d at 462; *Gamboa*, 383 S.W.3d at 269; *Staley v. Herblin*, 188 S.W.3d 334, 336 (Tex. App.—Dallas 2006, pet. denied); *see Gunter v. Empire Pipeline Corp.*, 310 S.W.3d 19, 22 (Tex. App.—Dallas 2009, pet. denied); *ExxonMobil Corp.*, 174 S.W.3d at 309. The trial court's "decision whether a settlement agreement should be enforced as an agreed judgment or must be the subject of a contract action requiring additional pleadings and proof is subject to the abuse of discretion standard of review." *Baylor Coll. of Med. v. Camberg*, 247 S.W.3d 342, 345–46 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see Mantas*, 925 S.W.2d at 659; *Staley*, 188 S.W.3d at 336.

In the instant case, the trial court did not enter an agreed judgment. In fact, the judgment specifically recognizes that the trial court is "prohibited from entering an agreed judgment" given that appellants had withdrawn their consent. Accordingly, we overrule appellants' first sub-issue.

## V. Contract

By their second sub-issue, appellants contend that the Rule 11 Agreement is not enforceable because it does not comply with basic contract law principles. Appellants specifically contend that the Rule 11 Agreement "fails for uncertainty, does not contain all essential terms, and is not complete in every material detail." In connection with this issue, appellants contend that the Rule 11 Agreement does not include an "accurate

12

description, legal description, or metes and bounds description" of the real property that encompasses the recreation hall, the ballroom, or the "seven lots" where appellants must pay assessments. Appellants further assert that the Rule 11 Agreement lacks a description or itemized list of the "ballroom furniture" or the "equipment, telephone systems, and security system." Appellants also argue that the phrase "take over control" as it pertains to the common areas and collecting assessments and expenditures is undefined and overbroad.

The essential or material terms of a contract, whether oral or written, must be definite, certain, and clear and, if they are not, the contract is unenforceable. *T. O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Southern v. Goetting*, 353 S.W.3d 295, 299–01 (Tex. App.—El Paso 2011, pet. denied); *Meru v. Huerta*, 136 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2004, no pet.); *see, e.g., Loeffler v. Lytle ISD*, 211 S.W.3d 331, 346 (Tex. App.—San Antonio 2006, pet. denied) (holding that a contract to sell real property was unenforceable because it did not contain a sufficient description of land subject to contract). The issue of whether a Rule 11 settlement agreement fails for lack of an essential term is generally a question of law to be determined by the court. *See Southern*, 353 S.W.3d at 300; *Broderick*, 333 S.W.3d at 904–05; *Martin v. Martin*, 326 S.W.3d 741, 746 (Tex. App.—Texarkana 2010, pet. denied); *Ronin v. Lerner*, 7 S.W.3d 883, 888 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Cantu*, 90 S.W.3d at 825; *Montanaro v. Montanaro*, 946 S.W.2d 428 (Tex. App.—Corpus Christi 1997, no writ).

Essential or material terms are those terms that the parties "would reasonably regard as vitally important elements of their bargain." *Potcinske v. McDonald Prop.*

13

*Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see Southern*, 353 S.W.3d at 300; *see also Gen. Metal Fabricating Corp. v. Stergiou*, No. 01-11-00460-CV, 2013 Tex. App. LEXIS 1453, at **10–15 (Tex. App.—Houston [1st Dist.] Feb. 14, 2013, no pet. h.) (op. on reh'g). "Whether a term forms an essential element of a contract depends primarily upon the intent of the parties." *Domingo v. Mitchell*, 257 S.W.3d 34, 40–41 (Tex. App.—Amarillo 2008, pet. denied). As long as the parties agree as to the essential or material terms of a contract, the agreement may leave other non-essential provisions open for future adjustment and agreement. *See Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555 (Tex. 1972); *Fiduciary Fin. Servs. of the Sw., Inc. v. Corilant Fin., L.P.*, 376 S.W.3d 253, 256 (Tex. App.—Dallas 2012, pet. denied); *E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 122 (Tex. App.—El Paso 2007, no pet.); *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 133 (Tex. App.—Waco 2005, pet denied); *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 29 S.W.3d 291, 300 (Tex. App.— Houston [14th Dist.] 2000, no pet.). In some circumstances, an agreement may be upheld by supplying missing terms, such as implying a reasonable price. *See Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex. 1966); *see also Gen. Metal Fabricating Corp.*, 2013 Tex. App. LEXIS 1453, at **10–15.

We first address appellants' arguments regarding the recreation room, the ballroom, and the seven lots where appellants must pay assessments. The pleadings in this lawsuit expressly identify the realty at issue as the Plantation South Subdivision, Hidalgo County, Texas. The subdivision is more particularly described in the Declaration of Covenants, Conditions, and Restrictions, which is filed of record in Hidalgo County.

14

"A writing need not contain a metes and bounds property description to be enforceable." *Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996). A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty. *See AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008); *see also Broaddus v. Grout*, 152 Tex. 398, 402, 258 S.W.2d 308, 309 (1953). The description of the land may be obtained from documents that are prepared in the course of the transaction, even if those documents are prepared after the contract for sale is entered into. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000); *see also Dittman v. Cerone*, No. 13-11-00196-CV, 2013 Tex. App. LEXIS 2343, at \*\*10–11 (Tex. App.—Corpus Christi Mar. 7, 2013, no pet. h.) (mem. op.). Extrinsic evidence may be used "only for the purpose of identifying the [property] with reasonable certainty from the data" contained in the contract, "not for the purpose of supplying the location or description of the [property]." *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983); *see Lowell v. Miguel R.*, 293 S.W.3d 764, 767 (Tex. App.—San Antonio 2009, pet. denied). "[I]f there appears in the instrument enough to enable one by pursuing an inquiry based upon the information contained in the deed to identify the particular property to the exclusion of others, the description will be held sufficient." *Templeton v. Dreiss*, 961 S.W.2d 645, 658 (Tex. App.—San Antonio 1998, pet. denied); *see Lowell*, 293 S.W.3d at 767. "Even when 'the record leaves little doubt that the parties knew and understood what property was intended to be conveyed, . . . the knowledge and intent of the parties will not give validity to the contract and neither will a plat made from extrinsic evidence.'" *Reiland v. Patrick Thomas Props.*, 213

15

S.W.3d 431, 437 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (quoting *Morrow v. Shotwell*, 477 S.W.2d 538, 540 (Tex. 1972)).

We conclude that the settlement agreement here describes the property to be conveyed with reasonable certainty, particularly given the recorded and platted nature of the subdivision, the numerous pleadings that describe the disputed property, and the discovery exchanged between the parties. One can identify the ballroom and recreation room to the exclusion of other property based on the information contained in the agreement and subdivision plat. *See Templeton*, 961 S.W.2d at 658. Further, to the extent that appellants appear to contend that the agreement pertaining to the seven lots at issue should be subject to the requirements for land descriptions sufficient to support a contract, we note that the agreement does not encompass the conveyance of title to those properties, but only reaches the payment of assessments on those properties for a finite period of time. Moreover, we note that the matter of assessments for those properties was the subject of trial testimony from Kanan and Huebe as referenced during the settlement hearing. The specific properties subject to the agreement regarding assessments are ascertainable by reference to the subdivision platting and the trial record.

Appellants also contend that the settlement agreement is unenforceable because the agreement does not list the specific items included as ballroom furniture or "equipment, telephone systems, and security system." Appellants do not point to any dispute, or potential dispute, regarding any items subject to the agreement. We conclude that the specific chairs or telephones at issue are not essential or material

16

terms which are vitally important to the agreement. *See Potcinske*, 245 S.W.3d at 531; *Southern*, 353 S.W.3d at 300.

Finally, appellants argue that the phrase "take over control" as it pertains to the common areas and collecting assessments and expenditures is undefined and overbroad. As stated previously, our primary objective in construing a Rule 11 agreement is to ascertain and give effect to the intentions the parties have objectively manifested in the written instrument, *see Trudy's Tex. Star, Inc.*, 307 S.W.3d at 914, and we interpret the intention of the parties based on the language of the entire agreement in light of the surrounding circumstances, including the state of the pleadings, the allegations therein, and the attitude of the parties with respect to the issues. *See Garza*, 345 S.W.3d at 479. Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005); *Heritage Res., Inc.v. NationsBank*, 939 S.W.2d 118, 121, 39 Tex. Sup. Ct. J. 537 (Tex. 1996). Control is generally defined as "to exercise [restraining] or directing influence over; to have power over." *See In re Lehman Bros. Merch. Banking Ptnrs. IV L.P.*, 293 S.W.3d 349, 352–53 (Tex. App.—Dallas 2009, orig. proceeding) (citing WEBSTER'S THIRD NEW INT'L DICTIONARY 496 (1993)). Appellants have not shown that the settlement agreement uses this term in a "technical or different sense." *See Valence Operating Co.*, 164 S.W.3d at 662. We conclude that the terminology used in the agreement is used in its ordinary and generally accepted meanings. We overrule appellants' second sub-issue.

## VI. STATUTE OF CONVEYANCES AND STATUTE OF FRAUDS

17

Appellants third and fourth sub-issues contend that the Rule 11 Agreement is not enforceable because it violates the statute of conveyances and the statute of frauds. Specifically, by their third sub-issue, appellants contend that the Rule 11 Agreement is not enforceable because it was made orally, but purports to pass title to property without being signed and reduced to writing as required by the statute of conveyances. *See* TEX. PROP. CODE ANN. § 5.021 (West 2004). By their fourth sub-issue, appellants similarly contend that the Rule 11 Agreement is not enforceable because it was made orally but is not to be performed within one year, or alternatively, because it constitutes a contract for sale of real estate or a lease agreement concerning real estate longer than one year, is not in writing, and is not signed by anyone. *See* TEX. BUS. & COM. CODE ANN. § 26.01 (West 2009).

Under the statute of conveyances, a "conveyance of an estate of inheritance, a freehold, or an estate for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing." *See* TEX. PROP. CODE ANN. § 5.021. The statute of frauds provides, in relevant part:

(a)     A promise or agreement described in subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1)     in writing; and

(2)     signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b)     Subsection (a) of this section applies to:

. . . .

18

(4)     a contract for the sale of real estate;

(5)     a lease of real estate for a term longer than one year;

(6)     an agreement which is not to be performed within one year
        from the date of making the agreement.

TEX. BUS. & COM. CODE ANN. § 26.01.

Texas Rule of Civil Procedure 94 expressly requires the pleading of the statute of frauds and "any other matter constituting an avoidance or affirmative defense," such as the statute of conveyances. TEX. R. CIV. P. 94; *see Phillips v. Phillips*, 820 S.W.2d 785, 791 (Tex. 1991). Such matters must be pleaded or they are waived. *See* TEX. R. CIV. P. 94; *Kinnear v. Tex. Comm'n on Human Rights*, 14 S.W.3d 299, 300 (Tex. 2000); *Swinehart v. Stubbeman*, 48 S.W.3d 865, 875 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 960 S.W.2d 343, 353 (Tex. App.—Corpus Christi 1997), *pet. denied*, 989 S.W.2d 360 (Tex. 1998) (per curiam). Appellants raised neither the statute of frauds nor the statute of conveyances in their pleadings below nor did they otherwise argue these issues to the trial court. *See generally* TEX. R. APP. P. 33.1. Accordingly, we overrule appellants' third and fourth sub-issues.

## VIII. INCOMPLETE

By their fifth sub-issue, appellants contend that the Rule 11 Agreement is not enforceable because the trial court, rather than the parties, supplied the terms and details of the agreement concerning: (1) the language of the deed regarding a life estate or reservation, (2) the inception of assessment payments to be made by Kanan's family members who occupy seven lots on the premises; and (3) the communication

19

regarding and cooperative scheduling and use of the premises by appellants and appellees.

While Texas courts favor validating transactions rather than voiding them, a court may not create a contract where none exists and generally may not add, alter, or eliminate essential terms. *Kelly v. Rio Grande Computerland Group*, 128 S.W.3d 759, 766 (Tex. App.—El Paso 2004, no pet.); *Oakrock Exploration Co. v. Killam*, 87 S.W.3d 685, 690 (Tex. App.—San Antonio 2002, pet. denied); *see also T.O. Stanley Boot Co., Inc.*, 847 S.W.2d at 222 (observing that courts cannot supply material contract terms); *Argo Data Res. Corp. v. Shagrithaya*, 380 S.W.3d 249, 274 (Tex. App.—Dallas 2012, no pet.) ("Although Texas courts favor validating contracts, we may not create one where none exists."); *see also Gen. Metal Fabricating Corp.*, 2013 Tex. App. LEXIS 1453, at **10–15.

A review of the transcript of the settlement hearing as quoted herein shows that appellants agreed that whether Kanan's relatives had to start paying assessments immediately or in three years was a legal issue, which the parties submitted to the trial court for decision. With regard to the remaining issues, that is, the terminology or specific language to be used in the deeds and the details regarding the cooperative use of the common areas, assuming without deciding that each of the matters raised with regard to this issue constitute material or essential terms of the agreement, the record shows that each of these matters was discussed in open court in a full colloquy between counsel for both parties and the trial court prior to the parties agreeing, on record, to the settlement terms as discussed. In short, this is not a case where the trial court added,

20

omitted, or altered terms of a settlement agreement. Accordingly, we overrule appellants' fifth sub-issue.

## IX. PLEADING AND PROOF

By their sixth and final sub-issue, appellants contend that the Rule 11 Agreement is not enforceable because appellees failed to provide proper pleading and proof to support enforcement of the agreement. Appellants contend that appellees failed to allege in their pleadings that appellants had revoked their consent to the agreement or breached the agreement.

Where consent to a Rule 11 agreement has been withdrawn, a court may enforce it through a separate breach of contract claim which is subject to the normal rules of pleading and proof. *See Padilla*, 907 S.W.2d at 462 ("An action to enforce a settlement agreement [pursuant to Rule 11], where consent is withdrawn, must be based on proper pleading and proof."); *see also Mantas*, 925 S.W.2d at 658; *Staley*, 188 S.W.3d at 336; *ExxonMobil Corp.*, 174 S.W.3d at 309. Thus, a claim to enforce a disputed settlement agreement should be raised through an amended pleading or counterclaim asserting breach of contract. *Padilla*, 907 S.W.2d at 462; *Staley*, 188 S.W.3d at 336; *Gamboa*, 383 S.W.3d at 269–70. Such a pleading must contain a short statement of the cause of action sufficient to give fair notice of the claim involved, including an allegation of a contractual relationship between the parties and the substance of the contract which supports the pleader's right to recover. *Cadle Co. v. Castle*, 913 S.W.2d 627, 630–01 (Tex. App.—Dallas 1995, writ denied). A motion to enforce can be considered a sufficient pleading to raise a breach of contract claim in a settlement agreement case. *See Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex.

21

2009); *Twist v. McAllen Nat'l Bank*, 248 S.W.3d 351, 361 (Tex. App.—Corpus Christi 2007, orig. proceeding [mand. denied]); *Bayway Servs., Inc. v. Ameri-Build Constr., L.C.*, 106 S.W.3d 156, 160 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Neasbitt v. Warren*, 105 S.W.3d 113, 118 (Tex. App.—Fort Worth 2003, no pet.); *see also Martinez v. Farmers Ins. Exch.*, No. 13-09-00648-CV, 2011 Tex. App. LEXIS 5810, at **7–8 (Tex. App.—Corpus Christi July 28, 2011, no pet.) (mem. op.). If the motion satisfies the general purposes of pleadings, which is to give the other party fair notice of the claim and the relief sought, it is sufficient to allow the trial court to render judgment enforcing the settlement. *Twist*, 248 S.W.3d at 361; *Bayway Servs., Inc.*, 106 S.W.3d at 160; *Neasbitt*, 105 S.W.3d at 117.

In the instant case, the pleadings relevant to the issue of enforcement were: appellants' emergency motion to abate enforcement of the agreement; appellees' motion to enforce the settlement agreement and for a temporary injunction; appellants' revocation of the purported agreement; appellants' brief in support of their notice of revocation and in opposition to the motion to enforce; and appellees' response to appellants' brief.

Appellees' pleadings sought enforcement of the settlement agreement and an injunction restraining appellants from interfering with the enforcement of the settlement agreement. These pleadings were sufficient to allow the trial court to render judgment enforcing the settlement agreement as a contract. *See Ford Motor Co.*, 279 S.W.3d at 663; *Twist*, 248 S.W.3d at 361; *Bayway Servs., Inc.*, 106 S.W.3d at 160; *Neasbitt*, 105 S.W.3d at 118. Further, the parties submitted the issues of breach and enforcement of the Rule 11 Agreement to the trial court with full briefing. Appellants did not object or

22

otherwise assert that they were entitled to summary judgment proceedings or trial on the issue of enforcement. *See, e.g., Gamboa*, 383 S.W.3d at 269–70; *Gunter*, 310 S.W.3d at 22; *Baylor Coll. of Med.*, 247 S.W.3d at 348; *Staley*, 188 S.W.3d at 336; *see also In re Build by Owner, LLC*, No. 01-11-00513-CV, 2011 Tex. App. LEXIS 7976, at **15–18 (Tex. App.—Houston [1st Dist.] Oct. 6, 2011, orig. proceeding) (mem. op). Instead, at the hearing on the motion to enforce the settlement agreement, counsel for appellants informed the court that "it really is truly a legal issue" regarding 'whether or not we have an enforceable agreement" and told the trial court that appellants would provide it with a proposed order. A litigant cannot ask something of a court and then complain that the court committed error in giving it to him. *Ne. Tex. Motor Lines, Inc. v. Hodges*, 138 Tex. 280, 158 S.W.2d 487, 488–89 (1942); *Naguib v. Naguib*, 137 S.W.3d 367, 375 (Tex. App.—Dallas 2004, pet. denied); *see also Martinez*, 2011 Tex. App. LEXIS 5810, at **7–8. Based on the specific facts of this case, we conclude that the pleadings before the trial court gave appellants fair notice of appellees' claims and the relief sought. We overrule appellants' sixth and final sub-issue.

## X. CONCLUSION

Having overruled appellants' issues, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
25th day of April, 2013.

23