

# NUMBER 13-19-00620-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

| | |
|---|---|
| **HAP FAIRHART A/K/A HAP FARHART,** | **Appellant,** |
| **v.** | |
| **KAYLEE AYN TURNER, LISA AYN FARHART TURNER, AND WILLIAM TURNER,** | **Appellees.** |

---

### On appeal from the 197th District Court
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Silva
### Memorandum Opinion by Justice Benavides

By two issues, appellant Hap Fairhart a/k/a Hap Farhart (Fairhart) challenges the

trial court's judgment enforcing a mediated settlement agreement (MSA) between Fairhart

and the appellees Kaylee Ayn Turner, Lisa Ayn Farhart Turner, and William Turner

(Turners). Fairhart argues the trial court erred when it (1) entered judgment solely based

on the motion to enforce the MSA when no underlying breach of contract claim was raised in the petition and (2) granted final judgment on the terms of the MSA in light of evidence of Fairhart's incapacity and contractual defenses. We affirm.

## I. BACKGROUND

This case is a dispute between family members that arose out of a disagreement regarding the ownership of land and stock options surrounding the Longhorn Cattle Company restaurant (Longhorn) in San Benito, Texas. In 1976, Fairhart acquired the 5.49 acres of land that Longhorn sits on. Lisa and William Turner are Fairhart's daughter and son-in-law and began helping run Longhorn in the 1980's; Kaylee is their daughter.

In 1993, Fairhart executed a warranty deed transferring the land Longhorn sits on to Kaylee, with a life estate in the property to himself and Lisa. Fairhart alleged in his petition that he did not physically transfer the deed to Kaylee or Lisa, but somehow the Turners obtained the deed and filed it with the county clerk's office. The Turners state that Fairhart gave the deed to Lisa and was aware of the filing near the time it occurred.

Twenty-two years later, in 2015, Fairhart filed suit requesting a declaration that the deed was invalid, and he asked the trial court to rescind the filing of the deed with the county clerk's office, cancel the deed, and quiet title. Fairhart also alleged fraud and breach of fiduciary duty actions against the Turners.[1] In 2018, the trial court sent the case to mediation for a third time.

---

[1] Fairhart also raised claims regarding stock options held by Lisa and William that were dated in 1987 and 1988 that were later included as terms of the MSA.

On April 30, 2018, the mediation was conducted and resulted in a handwritten MSA. The parties, minus Kaylee, signed that agreement.[2] However, the MSA was converted to a typed version, signed by all of the parties, and finalized on May 2, 2018. The mediator sent the trial court a report on May 2, 2018, in which he stated that he "mediated the case on April 30, 2018, and kept working with the [p]arties, and am happy to report to you that the case has been settled."

In September 2018, the Turners filed a motion to dismiss all claims with prejudice based on the MSA. On February 6, 2019, Fairhart filed a motion to set aside the MSA in which he said that due to his medical and physical condition,[3] he was unable to understand the terms of the proposed MSA and did not understand the nature and consequences of his action on April 30, 2018.

The trial court held a hearing in which Fairhart testified. He stated he was at the mediation on April 30, 2018, from approximately 7:30 a.m. to 8:00 p.m. Fairhart told the trial court he did not want to go to mediation and was going to just "go through the motions" while he was there. At the end of the mediation, Fairhart stated he was in distress from his condition and he could not read the handwriting on the MSA, the MSA was never explained to him, he did not have the mental capacity to understand the MSA, and there was never a "meeting of the minds" in his opinion. Fairhart claimed he e-mailed his

---

[2] Kaylee resided in the Austin area during this lawsuit, and the MSA was discussed with her by her attorney before she signed the MSA in early May 2018.

[3] Fairhart suffered from polio, was wheelchair bound, and had to catheterize his bladder every six to seven hours.

attorneys the following morning and told them there was no agreement because there was no "meeting of the minds," but he also stated that he told the attorneys he was willing to negotiate an agreement. Fairhart did not believe that he "knowingly" signed the MSA with any intention that it was an agreement and he told his attorneys he "did not have the mental capacity to agree over and over." He also stated that both times he signed the MSA (handwritten and typed versions), he signed it without knowing what it was. On cross-examination, Fairhart agreed he wrote an e-mail to the Turners on May 6, 2018, seven days after the mediation, that discussed recovering some of his private property from Longhorn and made references to the "agreement." He also made it clear that although no one "forced" him to stay during the mediation, he "wants his day in court."

Two witnesses also testified by deposition: Gilberto Hinojosa, one of Fairhart's lawyers, and Reynaldo Garza Jr., the mediator. Hinojosa stated he had known Fairhart for a lengthy period of time, that Fairhart has polio, and he was aware of his medical condition. In regards to signing the typed version of the MSA on May 2, 2018, Hinojosa said he would have never sent the document to be signed if he felt that Fairhart had not known or understood the consequences of signing it. Hinojosa also explained that if he had seen "something" on April 30 that caused him to feel that Fairhart was not mentally capable of making decisions regarding the mediation, he would have an "ethical obligation" to stop the mediation, but he did not see anything that caused him concern.

Garza testified that Fairhart was not under "duress" during the mediation. He also stated that neither he nor the attorneys restrained or threatened Fairhart. Garza stated

4

that if he had felt that Fairhart was impaired during the mediation, he would have spoken to the attorneys regarding it, but that conversation was not necessary.

On September 18, 2018, the Turners filed a response to a Rule 11 request from Fairhart regarding a previous hearing. In this response, they attached the MSA, the Rule 11 agreement regarding the MSA, and a letter dated October 24, 2017 that also incorporated terms of the settlement. The Turners also filed a motion to dismiss all claims with prejudice. Fairhart filed his motion to set aside the MSA on February 6, 2019. The Turners then filed an "Objection and Response to [Fairhart's] Motion to Set Aside the [MSA] and [Turner's] Motion to Enforce [MSA] and Request for Sanctions" in May 2019. The trial court issued its final judgment enforcing the MSA on November 8, 2019. This appeal followed.

## II. MEDIATED SETTLEMENT AGREEMENT

Fairhart alleges that the trial court (1) erred by entering its judgment based solely on the MSA when there was no underlying breach of contract claim that was raised in the petition, and (2) abused its discretion in granting the final judgment on the MSA due to evidence of Fairhart's incapacity and contractual defenses.[4]

### A. Standard of Review and Applicable Law

The trial court cannot render an agreed judgment after a party has withdrawn its consent to a settlement agreement. *Padilla v. LaFrance*, 907 S.W.2d 454, 461–62 (Tex. 1995); *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983). "When a

---

[4] Although Fairhart references the handwritten MSA signed on April 30, 2018 in his brief, we refer to the typewritten MSA on May 2, 2018, filed with the trial court throughout this memorandum opinion.

trial court has knowledge that one of the parties to the suit does not consent to a judgment, the trial court should refuse to sanction the agreement by making it the judgment of the court." *Quintero*, 654 S.W.2d at 444; *Burnaman v. Heaton*, 240 S.W.2d 288, 291(1951); *see Kanan v. Plantation Homeowner's Ass'n Inc.*, 407 S.W.3d 320, 329 (Tex. App.— Corpus Christi–Edinburg 2013, no pet.).

Nevertheless, a written settlement agreement may be enforced as a contract even though one party withdraws consent before the judgment is rendered on the agreement. *Mantas v. Fifth Ct. of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996) (per curiam); *Padilla*, 907 S.W.2d at 462; *Gamboa v. Gamboa*, 383 S.W.3d 263, 269 (Tex. App.—San Antonio 2012, no pet.); *Staley v. Herblin*, 188 S.W.3d 334, 336 (Tex. App.—Dallas 2006, pet. denied). The trial court's "decision whether a settlement agreement should be enforced as an agreed judgment or must be the subject of a contract action requiring additional pleadings and proof is subject to the abuse of discretion standard of review." *Baylor Coll. of Med. v. Camberg*, 247 S.W.3d 342, 345–46 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Kanan*, 407 S.W.3d at 329; *see Mantas*, 925 S.W.2d at 659; *Staley*, 188 S.W.3d at 336.

Where consent to an agreement has been withdrawn, a court may enforce it through a separate breach of contract claim which is subject to the normal rules of pleading and proof. *Kanan*, 407 S.W.3d at 334; *see Padilla*, 907 S.W.2d at 462 ("An action to enforce a settlement agreement, where consent is withdrawn, must be based on proper pleading and proof."); *Mantas*, 925 S.W.2d at 658. A claim to enforce a disputed

6

settlement agreement should be raised through an amended pleading or counterclaim asserting breach of contract. *Padilla*, 907 S.W.2d at 462; *Staley*, 188 S.W.3d at 336. Such a pleading must contain a short statement of the cause of action sufficient to give fair notice of the claims involved, including an allegation of a contractual relationship between the parties and the substance of the contract which supports the pleader's right to recover. *Cadle Co. v. Castle*, 913 S.W.2d 627, 630–31 (Tex. App.—Dallas 1996, writ denied). A motion to enforce can be considered a sufficient pleading to raise a breach of contract claim in a settlement agreement case. *Kanan*, 407 S.W.3d at 334; *see Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009); *Twist v. McAllen Nat'l Bank*, 248 S.W.3d 351, 361 (Tex. App.—Corpus Christi–Edinburg 2007, orig. proceeding [mand. denied]); *Bayway Servs., Inc. v. Ameri-Build Constr., L.C.*, 106 S.W.3d 156, 160 (Tex. App.— Houston [1st Dist.] 2003, no pet.); *see also Martinez v. Farmers Ins. Exch.*, No. 13-09-00648-CV, 2011 WL 3241912, at *3 (Tex. App.—Corpus Christi–Edinburg July 28, 2011, no pet.) (mem. op.). If the motion satisfies the general purposes of pleadings, which is to give the other party fair notice of the claim and relief sought, it is sufficient to allow the trial court to render judgment enforcing the settlement. *Kanan*, 407 S.W.3d at 334; *Twist*, 248 S.W.3d at 361; *Bayway Servs. Inc.*, 106 S.W.3d at 160.

## B.    Breach of Contract Claim

In his first issue, Fairhart argues that the trial court erred when it enforced the MSA when no breach of contract claim was raised in a petition or counterclaim. However, a motion to enforce can be sufficient to raise a breach of contract claim in a settlement

7

proceeding. *Kanan*, 407 S.W.3d at 334. The motion to enforce the MSA the Turners filed in this case described in detail the history and timeline of the case, addressed Fairhart's claims of incompetence due to medical issues, and requested that the trial court to enforce the MSA. As long as the motion to enforce gives the other party fair notice of the claim and relief sought, it is enough to allow the trial court to enforce the settlement agreement. *See id.*; *Bayway Servs., Inc.*, 106 S.W.3d at 160. Here, based on the detail provided in the motion to enforce, there was sufficient support that Fairhart had notice of the claim and the relief being sought. *See Kanan*, 407 S.W.3d at 334. The trial court did not abuse its discretion by approving the MSA. *See Camberg*, 247 S.W.3d at 345–46; *Kanan*, 407 S.W.3d at 329; *Mantas*, 925 S.W.2d at 659; *Staley*, 188 S.W.3d at 336. We overrule Fairhart's first issue.

## C.     Incapacitation

In his second issue, Fairhart alleges the trial court abused its discretion when it granted enforcement of the MSA in light of evidence of his incapacity. However, within the argument section of his brief, Fairhart does not make any argument regarding this issue or cite to any authority regarding this issue. A brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1. Even though the courts are to interpret briefing requirements reasonably and liberally, parties asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of their argument. *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—

8

Houston [14th Dist.] 2005, no pet.). Because Fairhart made no argument other than raising it as an "issue," we find his second issue has been waived.

### III.   CONCLUSION

We affirm the trial court's judgment.[5]

GINA M. BENAVIDES
Justice

Delivered and filed on the
27th day of May, 2021.

---

[5] Pending before this Court are two motions filed by the Turners that we carried with the case: (1) a motion for damages and (2) a motion to dismiss a frivolous appeal. We now deny these two motions.